HICKERSON & CO. *v.* INSURANCE COMPANIES.

(*Nashville.* February 13, 1896.)

1. FIRE INSURANCE. *Arbitration clause operative only where real differences are developed.*

The existence of a real difference between insurer and insured, arising out of an honest effort to agree, is necessary to make operative the condition in a fire policy that loss shall not be payable, or suit therefor maintainable, until the amount shall have been settled by arbitration. (*Post, pp. 194–197.*)

Cases cited and approved: 136 U. S., 242; 169 Pa., 349; 28 L. R. A., 405; 83 Cal., 246.

2. SAME. *Same. General objection to proofs of loss insufficient.*

A general objection to proofs of loss, which fails to point out in detail the specific items excepted to, and the grounds of exception, does not constitute such a failure to agree as renders the arbitration clause of an insurance policy operative to suspend payment of loss or suit for same. (*Post, pp. 197, 198.*)

3. SAME. *Appraisers act in a quasi judicial capacity.*

The appraisers act, under the arbitration clause of an insurance policy, in a judicial capacity, and must be free from bias in favor of either party. (*Post, pp. 198, 199.*)

4. SAME. *Arbitration clause waived, when.*

An insurer waives the arbitration clause by denying all liability, even when the policy expressly stipulates that the appraisal shall bind him only as to amount of loss, and not as to liability therefor. (*Post, pp. 199, 200.*)

Cases cited: 169 Pa., 349; 20 Neb., 331; 25 Neb., 505; 11 L. R. A., 599; 33 Am. St. R., 591.

5. SAME. *Selection of umpire by appraisers.*

The insurer's chosen appraiser cannot arbitrarily or unreasonably demand that an umpire shall be selected who lives at a place remote from the fire, and who is unknown to the insured and his appraiser. (*Post, pp. 200–207.*)

Cases cited and approved: 154 Ill., 9; 115 N. Y., 354; 28 L. R. A., 405; 101 N. Y., 362; 10 Daly, 538.

13—12 P

6. SAME.  *Same.  Waiver.*

And by such arbitrary and unreasonable demand that an umpire
be chosen who lives at a place remote from the fire, and is un-
known to the insured and his appraiser, the insurer waives all
right to arbitration.  (*Post, pp. 200–207.*)

7. SAME.  *Measure of damages.*

The market value of lumber on the yard, at the time and place
of fire, is the amount recoverable upon an insurance policy
covering it.  (*Post, pp. 207, 208.*)

8. SAME.  *Three-quarter clause.*

The Court reaffirms its decision holding the statute constitu-
tional that made the three-quarter clause of fire policies in-
operative and void.  (*Post, p. 208.*)

Cases cited: Dugger *v.* Insurance Co., 95 Tenn., 245.

---

FROM   COFFEE.

---

Appeal from Circuit Court of Coffee County.  M.
D. SMALLMAN,  J.

C. A. SHEAFE and GEO. W. CROSS for Hicker-
son & Co.

LELLYETT & BARR for Insurance Companies.

WILKES, J.    Plaintiffs, L. D. Hickerson & Co.,
were insured against loss by fire in the three com-
panies above named, the property insured being
lumber, upon a yard owned by them at Tullahoma,
Tenn.    The property having been destroyed by fire,
suit was brought upon the policies.    The causes
were consolidated and heard before the Court and a

jury, and a verdict was rendered against the companies separately, to wit: Against the German-American Insurance Company for $1,834.94; the Royal Insurance Co., $1,834.94; and the Equitable for $918.57, or a total of $4,588.45. The plaintiff remitted $34.94 each, as against the first named companies, so as to reduce the judgment against them to $1,800 each, the amount sued for in the summons, leaving the aggregate amounts of the judgments rendered $4,508.57.

It is insisted that the suits cannot be maintained under the provisions of what is termed the arbitration or appraisement clauses in the several policies. These clauses are substantially the same in each of the policies, and are the usual clauses found in the great majority of fire policies. We quote from the policy of the Royal Insurance Company, the others being, in substance and effect, the same: "The amount of sound value and of the damage shall be determined by mutual agreement between the company and the assured, or, failing thus to agree, the same shall then be immediately ascertained by a detailed appraisal by competent persons, etc., one to be appointed by the assured and one by the company (which two persons shall, in case of a disagreement, appoint a third), and their report, rendered in detail in writing and made under oath, shall be binding on the company and the assured as to the amount of such loss or damage, but shall not decide the legal liability of the company under this

policy." And again: "Until such notice as afore-
said is given, particular account and certificate pro-
duced, examinations and appraisals permitted by the
assured, the loss shall not be payable." Again:
"It is hereby expressly provided that no suit or
action against this company for the recovery of any
claim under or by virtue of this policy shall be
sustainable in any Court of Law or Equity until after
an award shall have been obtained fixing the amount
of such claim in the manner heretofore provided," etc.

Similar clauses and provisions in fire policies have
been upheld in the Courts, the leading case being
*Hamilton* v. *The Liverpool Company*, 136 U. S.,
242, where other authorities are collated. In some
Courts such provisions have been declared invalid,
and in others they have been much limited and cir-
cumscribed. See Biddle on Insurance, Sec. 1153.
In no tribunal have they been allowed to oust the
Courts of their jurisdiction (Biddle on Insurance,
Sec. 1153), and they must be so construed as, upon
the one hand, to protect the companies from fraud-
ulent claims, and, at the same time, to secure the
insured in the collection of his honest dues. It is
evident that the object of such provisions is to fur-
nish an easy court of appraisal and arbitration to
settle real differences of estimate and opinion with-
out the delay and cost of a suit for that purpose.
Until such real difference has arisen out of an honest
effort between the insurer and insured, there is neither
occasion nor authority for an appraisal and arbitration.

In Beach on Insurance, Sec. 1244, it is said, quoting from 82 Wis., 112: "The arbitration is only provided for in case the parties fail to agree." And again: "The condition making such award a condition precedent to the commencement of a suit upon a policy presupposes a failure to agree and consequent arbitration." Again, in Section 1310, it is said: "An allegation that the insured furnished such proof and offered, in writing, to arbitrate the amount of the loss, but that the company refused such arbitration and refused to pay the insurance, or any part of it, but not averring a failure to agree on the amount, was held not to show a right to resort to arbitration on the part of the insured."

In *Boyle* v. *The Hamburg Insurance Company*, 169 Pa., 349, it is held, in substance, that there is no authority for the appointment of appraisers when the insurers and the insured have made no effort to agree and settle between themselves. See, also, *Chapman* v. *Rockford Insurance Company*, 28 L. R. A., 405; *Farnum* v. *Phœnix Insurance Company*, 83 Cal., 246; Biddle on Insurance, Sec. 1157.

It appears in this case that Curry, an adjuster, went to the complainants' books and compared the original approximate statement of loss made by them with the books, and found what he claimed were discrepancies. To these he objected, and a revised statement was more carefully prepared from the books by the plaintiffs and submitted to the companies, but this does not appear to have been ex-

amined by the companies, and no counter statement was made to show the real account, as the companies understood it, but an appraisement was demanded without further effort to arrive at the loss.

These provisions in insurance policies are not intended to introduce or establish any new system for the adjustment of losses by fire, that does not obtain in other business settlements and transactions. It was never intended that an appraisal should be demanded by either party before any occasion for it had arisen. Otherwise they would both prove instruments to delay the settlement of losses, instead of aiding in their settlement. Upon the happening of a fire loss, the insured is required to give notice and furnish a detailed statement of his loss. When this is received by the company, it is incumbent on the company to examine the same, and if not agreed to, specific objections must be pointed out by the company, and an honest effort must then be made to adjust the difference. A mere general objection to the proofs, without pointing out in detail the items excepted to, will not be sufficient, but the objection must be so specific, with detail of items, as to enable the assured to see upon what points differences exist, and a counter statement, if necessary, should be furnished, showing the contention of the companies in such way that the difference, if practicable, may be adjusted and settled. If this shall fail after an honest effort is made, an appraisal may be demanded by either party, and only in such event. In the selection of

appraisers it is not contemplated that either party shall select a person with a view to sustain his own views or further his own interest, but the appraisers are to act in a *quasi* judicial capacity, and as a court selected by the parties, free from all partiality and bias in favor of either party, and so as to do equal justice between them. This tribunal, selected to act instead of the Court, and in place of a Court, must be like a Court, impartial and not partisan; and if these provisions are not carried out in this spirit, and for this purpose, neither party is precluded from going into the Courts to reach his just deserts, notwithstanding the provisions.

In many Courts it has been held that such demand for appraisal is a waiver of other defenses upon the part of the insurer, notwithstanding the policy may provide that the award shall be binding only as to the amount of loss, and shall not decide the liability of the company under the policy. Upon reason it would seem that this result should follow, as it would only be a farce to adjust the amount of loss, when the company denied liability for any amount. In such case the company has nothing to arbitrate, and the amount of damage is a matter to be determined only after the preliminary questions of liability have been conceded or adjudged.

We are of opinion, therefore, that the insurer cannot demand an appraisal and arbitration of the amount of loss, while, at the same time, it denies all liability under its policy, and a demand for appraisal by the

insurer is a waiver of other defenses going to the question of liability. *Rosenwald* v. *Phœnix Ins. Co.*, 3 N. Y. St. Rep., 215; Am. & Eng. Enc. of Law, Vol. XI., p. 354; Beach on Insurance, Sec. 1244; *Boyle* v. *Hamburg Ins. Co.*, 169 Pa., 349; *Western Horse Ins. Co.* v. *Putnam*, 20 Neb., 331; *German-American Ins. Co.* v. *Etherton*, 25 Neb., 505; *Warner* v. *Milford Ins. Co.*, 11 L. R. A., 599, and note; *Farnum* v. *Phœnix Ins. Co.*, 33 Am. St. Rep., 591, and note, p. 599.

In Biddle on Insurance, Sec. 1175, it is said: "When the insurer declines to recognize any liability to pay, this does not constitute a dispute, and the arbitration provisions are waived by such refusal."

Beach says, Section 1244: "If the company denies its liability for the loss, there would be nothing, from its standpoint, to arbitrate. Hence, the rule that such a provision is a condition precedent to a right to bring action on the policy does not apply when the company denies its liability."

In the case at bar an appraisement was demanded by the insurance company, and the selection of arbitrators required by them without any real occasion therefor, so far as we can see from this record, and without any proper effort to otherwise adjust the loss, such as the policy contemplates, and before any differences had arisen, and the insured need not have consented thereto. It was, however, submitted to by the insured, and submission papers were drawn up by the companies and handed to the in-

sured, and they were requested and required to name a party to act as their appraiser, which they did, and an appraiser was afterward named by the companies. The appraiser selected by the insured was a resident of the vicinity of the fire; the appraiser selected by the companies was a resident of Nashville, Tennessee. Why a resident of another locality than that where the loss occurred does not appear. It appears that the two appraisers attempted to select an umpire before they made any effort to agree between themselves upon the amount of loss, and before any difference had arisen between them. It appears to have been treated as one of the legal requirements of the policy and terms of submission, and tacitly assented to. In their efforts to agree upon an umpire, the appraiser of the companies submitted to the appraiser of the insured the names of nine persons, none of whom lived in the locality of the fire. One lived at Murfreesboro, the others at Nashville, Knoxville, Cincinnati, and Louisville. None of them were personally known to the appraiser of the insured. The appraiser of the insured submitted some eight or ten names of persons living in the vicinity, but none of them were acceptable to the companies' appraiser, and but one of them was known to him, though they could have been easily inquired about in the community. The companies' appraiser states that he insisted that, in fairness to all parties, some one should be selected who did not live in the vicinity, while the insured's

appraiser insisted that the umpire should be selected from the same locality as the fire, from persons who were conversant with prices, and he suggested every mill and business man whom he deemed com- petent, but the companies' appraiser would accept none of them. ·The appraiser of the insured states, further, that he suggested the name of a Louisville man, who happened at that time to be in the locality, and without having conferred with him. The appraiser for the companies assented, but afterwards ·asked the privilege of talking to him, and after this was done he declined to accept him. Thereupon the appraiser of the insured notified the appraiser of the companies that, having spent two days in an unsuccessful attempt to agree upon an umpire, there was nothing left for him ·to do. In his deposition he states that he made an honest effort to agree upon an umpire and could not, and that he was not directed in what he did by the plaintiffs.

This is a short statement of what is apparent from the record was a tedious and unjustifiable wrangle over the selection of an umpire before the necessity or occasion for one had arisen. It appears from the record that, while the insurance companies were thus insisting upon an appraisal, they were at the same time demanding further proofs of loss and a compliance with other provisions of the policy, and warning the insured that the adjudication of the amount of loss by appraisers would not be conclu-

sive as to their liability under the policies. In this connection, the case of *Brock* v. *Dwellinghouse Insurance Co.*, 61 N. W. Rep., 70, is in point. It is there said: "The term 'disinterested,' as applied to appraisers, does not simply mean lack of pecuniary interest, but requires the appraiser to be one not biased or prejudiced. The defendant selected as his appraiser an insurance adjuster residing at Grand Rapids, one hundred and thirty-five miles from where the fire occurred. The two appraisers disagreed in the selection of an umpire. Defendant's appraiser then suggested the names of three persons, one of whom resided at Grand Rapids, one in Lansing, and the third at Saginaw. The agreement does not contemplate that the umpire shall be selected at random, or without some knowledge on the part of both appraisers as to his competency and fitness. Parties living in the locality would naturally be best qualified to pass upon the question of values, and an appraiser would not be under obligation to make trips to other localities than that of the fire to ascertain as to the propriety of appointing the person suggested as an umpire. Strangers to the locality are not usually selected as appraisers, and in case of the inability of the appraisers to agree, a third party, known to both and in whom both have confidence, is supposed to be selected. Defendant insisted upon the appointment of a person with whom he was personally acquainted, who was a stranger to the locality and to the plaintiff's appraiser.

The latter offered the names of twelve residents of the locality from which the jury, in case of suit, would be drawn. No valid reason is given for a refusal to accept some one of the twelve, the only reason given being that he did not care to take the chances of getting one that would be partial. The requirement that plaintiff's appraiser should go into other parts of the State to make inquiry as to the fitness of the persons named was not a reasonable one. The suggestion that some one be selected from the locality of the fire was not an unreasonable one (as the fitness of parties near the locality could be easily ascertained). It is well settled that when the conduct of the company's appraiser, in refusing to agree on an umpire, is inexcusable and virtually amounts to a refusal to proceed with the appraisement, the fact that the appraisement was not concluded before suit brought will not bar an action on the policy." *McCullough* v. *The Insurance Co.,* 113 Mo., 606; *Bishop* v. *The Insurance Co.,* 130 N. Y., 488; *Uhrig* v. *The Insurance Co.,* 101 N. Y., 137; *Bradshaw* v. *The Insurance Co.,* 137 N. Y., 137.

In the McCullough case, above cited, the Court say: "The appraisers could not agree as to the value of the property destroyed or the amount of damage sustained, nor could they agree on a third man. McGraw (the appraiser for the insured) then suggested the names of four or five persons, some of whom resided in the county, some at Boonville,

and others at points not far distant. White (appraiser of the company) would not agree to either of them, and suggested the names of some others living in St. Joseph, Kansas City, and St. Louis, at least two hundred miles distant from where the fire occurred. McGraw would not agree to them because of their remoteness from the place of the fire and want of knowledge of the value of property in that locality, but White would not agree to any other person. His course, to say the least of it, was unreasonable, unjust, and tantamount to a refusal to proceed with the appraisement. Justice and fair dealing did not require the plaintiffs to wait longer than they did before instituting this suit.''

In *Niagara Insurance Co.* v. *Bishop*, 154 Ill., 9, it was held that, where the appraiser of the company refuses to agree upon an umpire living in the vicinity of the fire, and insists upon a person of whom the other appraiser knows nothing, the insured is relieved from the necessity of an award before bringing suit.

In *Braddy* v. *New York Bowery Insurance Co.*, 115 N. Y., 354 (20 S. E., 477), it was held that it was not unreasonable on the part of the appraiser of the insured to object to an umpire suggested by the appraiser of the company, upon the ground that he was unknown to the former, and that he lived remote from the place of the fire.

In *Chapman* v. *Rockford Insurance Co.*, 28 L.

R. A., 405, it was held that the insured is not required to enter into a new appraisement or name another appraiser when the appraiser of the company has shown perverse conduct or want of utmost good faith in attempting to obtain an appraisement. In this case the Court said, further, that it was not permissible for the insurers to arbitrarily or capriciously demand an appraisal (before an effort to settle and an honest difference has arisen) simply to suspend a claim for loss, and then select an appraiser who will perversely refuse to concur in an umpire unless he comes from Chicago, or is the kind of man the insurers want. Such a course, if tolerated, places the assured very largely at the mercy of the insurer. "Any attempt on the part of either party to misuse or pervert the provisions of the policy as to an appraisal so as to unreasonably delay an adjustment, or to secure an unjust abatement of an honest loss, is a breach of good faith, and should be treated as a waiver of the condition and dispensing with the necessity of an appraisal or warranting a resort to an action without one, if the party thus prejudiced has used all fair and reasonable means and diligence on his part to secure it. To hold otherwise would be to permit the party in fault to profit by his own wrong. The arbitration having failed in consequence of the perverse conduct and want of good faith of the insurance companies, represented by their adjuster and appraiser, the plaintiff was not bound to enter into

a new one or name another appraiser, even if the companies were willing to name a new one on their part." Citing, also, *Uhrig* v. *Williamsburgh Insurance Co.*, 101 N. Y., 362; *Davenport* v. *Long Island Insurance Co.*, 10 Daly, 538–9.

See, also, Biddle on Insurance, Sec. 1162, Vol. II., where it is said: "When each side duly selects an arbitrator, but the umpire fails of selection, there need not be a new arbitration proceeding." Citing the case in 101 N. Y., 362.

We are satisfied that the action of the appraiser for the companies in this case was arbitrary, and his demands unreasonable, and the appraiser of the insured was not bound to submit to them. Nor, under the facts disclosed in this record, was the insured bound to submit, in the first instance, to an arbitration, or proceed further in an attempt at appraisal after the effort made, and they were justified in bringing their suit when they did.

The only other question which we think it material to consider is, whether the verdict or judgment in this case is excessive, or not supported by the evidence. The matter was submitted to a jury, and they have passed upon this question as best they could, and there is certainly evidence to support their finding. It is said that there is a discrepancy between the amounts stated in the proof of loss and the evidence given by the same parties. This is explained by the assured with a statement that the proofs of loss were intended to be only approximate,

and showed actual cost of the material on the yard, while the evidence showed its actual market value at the same place; that the latter statement shows the actual loss estimated by market value, while the proof of loss shows the same estimated by actual cost, made out as suggested by the companies.

The plaintiffs are, we think, entitled to the market value of their property destroyed, so far as covered by their policies. The three-fourths value clause in the policies sued on in this cause has been held to be inoperative under our statute. *Dugger* v. *Insurance Co.*, 11 Pick., 245 (32 S. W. Rep., 5). And the plaintiff is not restricted to that amount of recovery.

We see no error in the judgment of the Court below, and it is affirmed with costs.