St. Paul Fire & Marine Insurance Co. *et al. v.* Kirk-
patrick *et al.*

(*Nashville.* December Term, 1913.)

1. **INSURANCE.** Fire insurance. Waiver of forfeiture.

Forfeiture of a fire policy by the sale by insured of the damaged
property, when the policy gave the company the option of
taking the part of the articles saved from the fire at the ap-
praised value, was waived by the company by thereafter de-
manding an arbitration and appraisement of the loss; such
demand being equivalent to an admission of liability on the
policy. (*Post, p.* 63.)

2. **INSURANCE.** Fire insurance. Admission of liability.

A demand by a fire insurance company for an appraisement and
arbitration pursuant to the policy is equivalent to an admission
of liability thereon. (*Post, p.* 64.)

Cases cited and approved: Hickerson v. Insurance Companies,
96 Tenn., 193.

3. **INSURANCE.** *Fire insurance.* Arbitration of loss. Refusal
to arbitrate. Effect.

If insured fails to comply with a demand by the company for
arbitration of the loss pursuant to an arbitration clause, he
cannot sue thereon, and such refusal, if unreasonably persisted
in, forfeits the policy, and, if the company refuses such a de-
mand, insured may sue on the policy at once. (*Post, p.* 64.)

4. **INSURANCE.** Fire insurance. Appraisement. Fraud.

If an arbitration of the amount of loss fails because of fraud or
intermeddling by insured, he cannot sue on the policy; and,
if it fails by the fraud, etc., of the company, insured may
abandon the arbitration and sue on the policy. (*Post, pp.* 64, 65.)

Insurance Co. v. Kirkpatrick.

5. INSURANCE. Fire insurance. Arbitration of loss. Reappraisement.

If the parties have appointed appraisers to determine the loss pursuant to an arbitration clause in a fire policy, and the appraisement has failed without fault of either party, insured cannot be required to select another arbitrator. (*Post, pp.* 65-68.)

Cases cited and approved: Jerrils v. German American Insurance Co., 82 Kan., 320; Spring Garden Insurance Co. v. Amusement Syndicate Co., 178 Fed., 519; Western Assurance Co. v. Decker, 98 Fed., 381; Connecticut Fire Insurance Co. v. Cohen, 97 Md., 294; Shawnee Fire Insurance Co. v. Pontfield, 110 Md., 353; Bretzfelder v. Merchant's Insurance Co., 123 N. C., 164; Bernhard v. Insurance Co., 79 Conn., 388; Globe, etc., Insurance Co. v. Johnson (Ky.), 127 S. W., 765; Coffin v. German Fire Insurance Co., 142 Mo. App., 295; Western Assurance Co. v. Hall, 120 Ala., 547; Niagara Fire Insurance Co. v. Bishop, 154 Ill., 9.

6. INSURANCE. Fire insurance. Arbitration.

Upon the filing of a bill by a fire insurance company to set aside an award of arbitrators, the court acquired jurisdiction of the controversy, and could set aside the award and enforce the policies under a cross-bill praying for their enforcement, without the selection of new arbitrators. (*Post, p.* 68.)

Cases cited and approved: Dixie Fire Insurance Co. et al. v. American Confectionery Co., 124 Tenn., 247; Continental Insurance Co. v. Garrett, 125 Fed., 590.

7. INSURANCE. Fire insurance. Award of arbitrators. Actions to set aside. Cross-bill.

In a suit by fire companies to set aside an award of arbitrators, defendant could file a cross-bill to enforce the award, or, in the alternative, to enforce the policies, if the award was set aside, (*Post, p.* 68.)

Acts cited and construed: Acts 1901, ch. 141, sec. 1.

Insurance Co. v. Kirkpatrick.

8. **INSURANCE.** Fire insurance. Nonpayment of premiums.. Penalties. Demand for payment.

Under Acts 1901, ch. 141, sec. 1, providing that insurance companies who refuse to pay the loss within 60 days after demand by the policy holder shall be liable to pay the holder, 'in addition to the loss, a sum not exceeding 25 per cent, on the liability for said loss, if such refusal to pay is not in good faith, a formal demand for payment must be made by the insurer after maturity of the policy, and, if the company fails to pay within 60 days thereafter, insured may sue on the policy or award and recover the penalty, if the refusal was not'in good faith. (*Post, p.* 69.)

9. Insurance. Fire insurance. Payment of loss. Demand.

If no demand is made for arbitration of the loss under a fire policy, it matures, for the purpose of authorizing a formal demand for payment in order to fix the penalty pursuant to Acts 1901, ch. 141, sec. 1, at the expiration of the number of days fixed in the policy for maturing; but, if the policy provides for payment a certain number of days after the filing of an award, the date of maturity would be governed by the number of days so fixed. (*Post, p.* 70.)

Cases cited and approved: Mutual Reserve Fire Insurance Co. v. Tuchfeld, 159 Fed., 833; Lester v. Insurance Co., 55 Ga., 475, 480; Iowa Insurance Co. v. Lewis, 187 U. S., 335.

10. **INSURANCE.** Fire insurance. Nonpayment of loss. Penalties.

If an award of arbitrators as to the amount of loss under a fire policy was defective, and the company sued to set the award aside, no penalty could be imposed under Acts 1901, ch. 141, sec. 1, imposing a penalty on the company for a bad-faith refusal to pay the loss within 60 days after demand; the time for making a formal demand for payment not having arrived. (*Post, p.* 71.)

ON PETITION FOR A REHEARING.

11. **INSURANCE.** Penal statute. Strict construction.

Acts 1901, ch. 141, sec. 1, imposing a penalty on insurance com-

panies refusing in bad faith to pay the loss within 60 days after demand is made, is penal, and must be strictly construed. (*Post, p.* 72.)

12. INSURANCE.    Fire insurance.    Nonpayment of loss.    Penalty.

Under Acts 1901, ch. 141, sec. 1, providing that, upon the refusal of an insurance company to pay the loss within 60 days after demand, it shall be liable to pay a certain sum as a penalty, if the refusal was not in good faith, the failure to pay the loss within 60 days after demand would place the burden on the company of showing that such failure or refusal was in good faith. (*Post, p.* 73.)

FROM BEDFORD.

Appeal from Chancery Court, Bedford County.— W. S. BEARDEN, Chancellor.

R. LEE BARTELS, for appellants.

THOMAS N. GREER, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The original bill was filed for the purpose of setting aside an award of arbitrators appointed by the respective parties under five several policies on the property of the defendant, which had been destroyed by fire. The property consisted of a stock of goods and fixtures in the town of Shelbyville, Tenn. The complainants were four of the insurance companies that had issued policies on the property. The fifth one

of the companies submitted to the award and paid its part of the loss.  A cross-bill was filed by Mrs. Kirkpatrick against the original complainants, seeking in the first place to enforce the award, and, in the alternative, to enforce the policies irrespective of the award, in case the court should set aside the award under the application for that relief made in the original bill. The cross-bill also sought to enforce the penalty which is authorized under the Acts of 1901, ch. 141, against insurance companies which refuse to pay the loss when such refusal is not in good faith.  A jury was demanded by one of the parties, and the case was tried by the chancellor and the jury, in accordance with the forms of law appertaining to that subject.

The issues were in the form of questions submitted to the jury.  They were as follows, together with the answers which the jury made thereto:

"(1)  What was the amount of loss or damage to the stock of merchandise of Mrs. Ada Kirkpatrick, caused by the fire referred to in the pleadings?  A. $5,100.  (2)  What was the amount of loss or damage to the furniture and fixtures of Mrs. Kirkpatrick, caused by the fire referred to in the pleadings?  A. $500.  (3)  Have all the valid stipulations of the policies required to be performed before action can be maintained to recover loss under the policies been either complied with by the cross-complainant, Mrs. Kirkpatrick, or waived by the insurance companies? A. Yes.  (Peremptory instruction of court.)  (4)  Was the refusal of the insurance companies to pay the loss

of the property insured under the policies made in good faith? A. No. (5) What expense, loss, and injury has Mrs. Kirkpatrick incurred on account of the refusal of the companies to pay the amount of the loss? A. $1,000. (6) Should the insurance companies be required to pay interest? A. Yes. (7) Did the insurance companies waive their right to take the stock of goods or salvage remaining after the fire? A. Yes. (Peremptory instruction of court.) (8) Was the refusal of the insurance companies to pay the amount of the award made in good faith, after demand therefor made more than sixty days after the award rendered? A. (Peremptorily instructed by the court to answer this issue as follows:) (1) That there was a demand for payment, and refusal to pay after that demand; (2) that there was no demand for payment, etc., made more than sixty days after rendition of award.''

The chancellor set aside the award and rendered judgment on the policies in accordance with the responses of the jury, and also for $1,000, the penalty referred to in the fifth issue.

The insurance companies prayed an appeal to this court, and have here assigned errors upon both branches of the case.

Several errors are assigned upon the admission of evidence, but these matters have been disposed of orally, and are not included in this opinion.

The only matters that will be here considered are those which arise under the peremptory instructions

which the chancellor gave under issues 3 and 8.

In order to properly understand the matters arising under the third issue, it is necessary to state the facts with some degree of particularity:

The fire occurred on the 7th of June, 1911. Immediately thereafter notice was given to the insurance companies, and they sent their adjusters to the place. After making their inspection, they suggested to Mrs. Kirkpatrick, the insured, that she have an inventory made. This she did, showing a loss nearly the amount which the jury subsequently found. The adjusters, not being satisfied with this, appointed an agent of their own, Mr. Page, to prepare an inventory, and his inventory showed the loss to be about $1,500 less than that shown by the inventory of Mrs. Kirkpatrick. Here the matter rested for a time. The inventory made by Mr. Page showed something over $1,000 worth of goods saved from the fire, though in a damaged condition. The attorney for the insured wrote to the adjuster representing three of the companies, stating that, if the companies desired to further examine the goods so saved, they would be preserved for that purpose, but, if this was not desired, they would be advertised and sold. Quite a number of days elapsed without any reply being received. Thereupon the insured advertised the goods for sale. A day or two before the sale took place, which was on July the 8th, the adjuster wrote to the attorney for the insured that he had heard that the goods were to be sold, and that he was now writing for the purpose of saying he wished

it to be understood the companies were not consenting to the sale. In the letter complainants' attorney requested the companies to say whether they objected to the sale. The response was in the form stated; no direct objection being made. Taking the letter as a refusal on the part of the companies to object, and therefore as an indirect form of assent, the goods were sold.

Thereupon considerable correspondence ensued, the purport of which was that the insured desired the companies to say what they considered the loss to be. After much sparring the companies finally demanded an appraisal. There was a clause in each of the policies to the general effect that, in case a difference should arise between the parties as to the amount of the loss, it should be submitted to arbitrators, one to be selected by each of the parties, and the two arbitrators to select an umpire. The arbitration agreement was drawn up, and under this the arbitrators were to estimate and appraise the loss, stating separately sound value and damage. They filed their report, in which they found the damages in a round sum at $4,300. They also required in the submission agreement to estimate the loss on the fixtures, but their report contained nothing on this subject.

When this report was filed, the insured, through her attorney, wrote to the companies, inquiring whether the award was satisfactory, and whether payment would be made thereunder. The reply was the original bill in this case to set aside the award because it

Insurance Co. v. Kirkpatrick.

did not comply with the submission. Thereupon the insured, through her attorney, wrote to the adjuster who had the matter in charge, suggesting and asking that the arbitrators be recalled, in order that they might supply the deficiencies complained of. This was referred to the counsel for all the companies, and he declined the offer. Then the cross-bill was filed, which has already been mentioned.

There was a clause in the policies to the effect that it should be optional with the companies to take the whole or any part of the articles saved out of the fire at the appraised value within a time fixed.

It is insisted that, by the sale of the recovered property, the insurance companies were deprived of this option, and hence the policies were all forfeited, and there could be no recovery in this case on that ground.

To say nothing of the equivocal response made by the insurance companies to the inquiry as to whether the goods should be retained or sold, we are of the opinion that the subsequent demand for an arbitration and the appraisal of the loss waived the forfeiture. Such demand was equivalent to an admission of liability on the policies, and, being made after the companies knew that the goods had been sold, was necessarily a release of their option to demand the goods themselves. The demand for arbitration in this aspect of the matter could have meant nothing else than that the damages should be ascertained by the testimony of those who had seen and examined the stock, by the books, and by the inventories.

That a demand for an appraisal and arbitration is .equivalent to an admission of liability on the policy .see *Hickerson* v. *Insurance Companies,* 96 Tenn., 193, 199, 200, 33 S. W., 1041, 32 L. R. A., 172, and cases ·cited.

It is insisted on behalf of the insurance companies ·that, on the failure of the award, without fault of the companies, it was the duty of the parties to select new arbitrators, and that no suit could be brought on the policies until this should be done. The companies, however, did not, in fact, ask for the appointment of ·new arbitrators, but only that the award should be set .aside because not in compliance with the submission. It does not appear that any demand was made on the insured for the appointment of a new arbitrator, nor ·was any new arbitrator selected by her.

The rules applicable to this general subject sup- ·ported by the weight of authority are as follows: When there is an arbitration clause in substance like ·the one we have described, it is the duty of either par- ·ty to comply and appoint an arbitrator, when requested so to do by the other party. If the insured fails to comply with this demand, he cannot sue on the policy, and, if the refusal be persisted in for an unreasonable time, it will amount to a forfeiture of the policy. If the refusal be on the part of the insurer, the insured :may bring suit on the policies at once. There are cases to the effect that, where the insured at ·first refuses, .and then complies, the policy is not forfeited. Where .appraisers are appointed and the arbitrator fails, by

reason of the fraud or intermeddling of the insured, the right to sue on the policies is lost. Where the fraud of intermeddling with the appraisers is at the instance of the insurer, the insured may abandon the arbitration and sue on the policies. Where the appraisers or arbitrators are appointed, but the arbitration falls without the fault of either party, the authorities differ as to the result. There are many authorities to the effect that it is the duty of the parties to agree upon new arbitrators, and continue again and again to select new arbitrators, as occasion requires, until a board be chosen which will bring in a valid award. There are other authorities to the effect that, where the insured has complied with the arbitration clause by appointing an appraiser, and the arbitration has failed without his fault, he has discharged his duty, and he cannot be required to select another arbitrator, or to participate in the choosing of a new board. This latter view is sustained by the following authorities: *Jerrils* v. *German American Insurance Co.*, 82 Kan., 320, 108 Pac., 114, 28 L. R. A. (N. S.), 104, 20 Ann. Cas., 251; *Spring Garden Insurance Co.* v. *Amusement Syndicate Co.*, 178 Fed., 519, 102 C. C. A., 29; *Western Assurance Co.* v. *Decker*, 98 Fed., 381, 39 C. C. A., 383; *Connecticut Fire Insurance Co.* v. *Cohen*, 97 Md., 294, 55 Atl.., 675, 99 Am. St. Rep., 445; *Shawnee Fire Insurance Co.* v. *Pontfield*, 110 Md., 353, 72 Atl., 835, 132 Am. St. Rep., 449; *Bretzfelder* v. *Merchants' Insurance Co.*, 123 N. C., 164, 31 S. E., 470, 44 L. R. A., 424; *Bernhard* v. *Insurance Company*, 79 Conn., 388, 65

Atl., 134, 8 Ann. Cas., 302, and note; *Globe, etc., Insurance Co.* v. *Johnson* (Ky.), 127 S. W., 765; *Coffin* v. *German Fire Insurance Co.*, 142 Mo. App., 295, 126 S. W., 253; *Western Assurance Co.* v. *Hall*, 120 Ala., 547, 24 South., 936, 74 Am. St. Rep., 48. And see *Niagara Fire Insurance Co.* v. *Bishop*, 154 Ill., 9, 39 N. E., 1102, 45 Am. St. Rep., 105. The subject is discussed, and the authorities collected on both sides of the question in a note to 15 L. R. A. (N. S.), 1055 *et seq.* We believe the view sustained by the cases we have just referred to is the sounder one. One needs only to read the cases showing the trickery employed by both the insured and by insurance companies to be convinced that the arbitration clause is productive of but little good in actual practice, and is more productive of delay than conducive to speedy justice. Generally the arbitrators regard themselves as the agents and champions of the persons who appoint them, and there is very often great difficulty in choosing the umpire, because the respective arbitrators desire to secure some one supposed to be favorable to the side of the controversy which appointed him. This sometimes appears in such way as to be incapable of legal proof, yet the conclusion forces itself upon the mind of the careful investigator that partisanship is really involved. It is supposed that these boards cheapen and shorten the ascertainment of the amount of the loss. The purpose evidently was, in the beginning, that two fair-minded men should be selected, and they should select a third of like disposition, and that these two

should inspect the loss, and return a reasonable finding. We have no doubt that in many cases this result is obtained. Really, however, the arbitrators so selected are a legal board, and their conclusions may be questioned by the writ of *certiorari* in this State, just as those of any other board of arbitrators, and hence there is likely to be, in any given case, a long litigation over the award. It seems to us more conducive to justice that after one board has been appointed, that this should satisfy the agreement, entered into at the issuance of the policy, that such board should be appointed. This view enables the parties to go directly into court for settlement of the questions involved, on failure of the arbitration board. Arbitrators, even of the limited kind under examination, to some extent oust the courts of their jurisdiction of causes, or have a tendency to do so, and should not be encouraged, or, at least should be subjected to a strict construction. This view will lead more certainly to the quick and just settlement of controversies than the continued forced submission of rights to raw and inexperienced tribunals, to say nothing of the prejudices and predilections with which they are likely to be imbued.

Furthermore, even on the opposite theory, it seems to us it would have been the duty of the insurance companies to agree to the recall of the arbitrators in order that they might correct the error they had fallen into, inasmuch as no charge of fraud was made against them, nor was there any intimation that they had acted in an unfair manner, or had been influenced by unfair

motives. But it is unnecessary to go further into this particular phase of the matter, since we believe that neither party, under the principles already stated, was bound to go further with the arbitration after it had failed, in the manner stated, without fault of either party.

Furthermore, we are of the opinion that, when the bill was filed in the chancery court to set aside the award, that court immediately obtained jurisdiction of the whole controversy, and it had the right to settle it under a cross-bill in any view, without the selection of new arbitrators. *Dixie Fire Insurance Co. et al.* v. *American Cofectionery Co.,* 124 Tenn., 247, 249, 136 S. W., 915, 34 L. R. A. (N. S.), 1897; *Continental Insurance Co.* v. *Garrett,* 125 Fed., 590, 593, 60 C. C. A., 395.

We are of the opinion, on the grounds stated, that the chancellor committed no error in instructing the jury as he did under issue No. 3. The stipulations referred to had reference to the arbitration. We are further of the opinion that the cross-complainant had the right to file such a cross-bill as was filed, and the evidence sustaining the amount of the loss fixed by the jury under issue No. 1, the decree is affirmed on that branch of the case.

Second, as to the penalty: The Acts of 1901, ch. 141, sec. 1. provides:

"That the several insurance companies . . . in all cases when a loss occurs and they refuse to pay the same within sixty days after a demand shall have been

made by the holder of said policy on which said loss occurred, shall be liable to pay the holder of said policy, in addition to the loss and interest thereon, a sum not exceeding 25 per cent. on the liability for said loss; provided . . . the refusal to pay . . . was not in good faith," etc.

The eighth issue deals with this subject. The jury were instructed to find that, while there was a demand for payment of the award, and a refusal to pay after that demand, yet there was no demand for payment made for more than sixty days after the rendition of the award.

The true construction of the act in question is this: A formal demand must be made on the insurer for the payment of the amount due after the maturity of the policy is fixed according to its terms. If, after such formal demand, the insurer fails to pay for the space of sixty days, or within the sixty days refuses to pay, then the insured may sue on the policy, or on the award, if there be one, and recover the penalty, if it appears, in addition to the lapse of time, that the refusal or failure to pay was not in good faith. This statute was so construed in *Mutual Reserve Fire Insurance Co.* v. *Tuchfeld,* 159 Fed., 833, 834, 86 C. C. A., 657. The Georgia statute, which is, in substance, the same as our own, was likewise so construed in the case of *Lester* v. *Insurance Co.,* 55 Ga., 475, 480. See, also, *Iowa Insurance Co.* v. *Lewis,* 187 U. S., 335, 23 Sup. Ct., 126, 47 L. Ed., 204, construing a Texas statute very much like our own. Where proofs of loss are

furnished, and no demand is made for arbitration, the policy matures at the expiration of the number of days fixed for maturement in the policy after such submission of proofs. Where the policy provides for payment after the lapse of a given number of days after the filing of an award, where an arbitration has been demanded, the date of maturity, for the purposes of the present statute, would be governed by the number of days so fixed in the contract. After the expiration of this time so fixed, the duty devolves on the insurance company to pay the amount of the loss. If it does not pay, the formal demand required by the penalty statute above quoted should be made. A failure to pay for sixty days thereafter would justify a recovery of the penalty upon its further being made to appear that the failure was not in good faith. Likewise a refusal within the sixty days after such formal demand would justify suit, and the penalty would be incurred, provided, as in the previous case, it should be made to appear that the refusal to pay was not in good faith.

The formal demand not having been made, as required by the statute, there can be no recovery of the penalty. The formal demand not having been made in this case, it is not necessary to consider the question of good faith or the contrary. It is true there was a demand made in the present case, but it does not appear when it was made. Furthermore, it cannot be said that the time for the formal demand to initiate the liability for the penalty had arrived; since an arbitration had been demanded and submitted to, and had

Insurance Co. v. Kirkpatrick.

been partly executed by the arbitrators, but not fully, and a bill had been filed by the insurance companies to set aside the award. The award being defective, the insurance companies had the right to file a bill to set it aside, and therefore the time for making the formal demand never really arrived.

The result is that the decree is affirmed as to the amount due on the policies, but reversed as to the penalty.

The costs will be divided in the following proportions: Five-sixths will be paid by the complainant companies, and one-sixth by the cross-complainant.

### ON PETITION FOR A REHEARING.

The petition makes the point that the opinion upon the subject of the penalty is in conflict with the case of *Thompson* v. *Interstate Life & Accident Insurance Co.*, dcided by this court at its recent Knoxville term, and reported in 128 Tenn., 526, 162 S. W., 39. A comparison of the two cases will so readily show the absence of conflict that we deem it unnecessary to make any comment on the point further than to say the opinion in that case shows there was a demand and a refusal of that demand within sixty days. In the case before us, it does not appear that any demand was made after the obligation of the company to pay had accrued. There was a demand, whether formal or not in the sense of the statute does not appear, to pay the amount fixed by the arbitrators, but the companies' failure to comply with that demand was justified by the subse-

quent decree of the chancery court setting aside the award on the grounds stated supra, as to which there was no appeal. So it is not shown that the insurers remained in default for the period of sixty days after formal demand made to pay a loss duly fixed on them pursuant to the terms of their contracts; nor that they refused to pay within such sixty days.

It is urged by the complainant that the construction we have given the statute affords litigants against insurance companies no relief. This suggestion is based, as we think, on a misconception of the purpose of the statute. It is a penalty statute, and must be strictly construed. The demand provided for in the statute is intended to operate as a fair warning to the insurer that the penalty will be claimed, on failure to pay within sixty days. It is not improper or unjust that such warning should be required. This requirement does not have any bearing upon the right of the insured to enforce the contract itself. Immediately upon the maturing of the policy under its terms, the arising of the duty to pay, the insured may bring suit to enforce the contract. The penalty statute gives an additional right. Its purpose was to supersede the necessity of suit, or, in case suit should finally have to be brought as a result of the delinquency of the insurer, then to indemnify the insured against delay interposed and defense made in bad faith; the underlying thought being that the insurers on formal demand so made would, noting the warning, thereby be induced to pay the loss without suit, in the absence of some real and *bona fide*

defense.  Is it not better that the insured should in this simple manner hasten the payment of the loss within two months than that suit should be brought immediately on the maturity of the policy, and then that the insured should be compelled by the necessary delays of litigation to wait many months, or a year, or longer?  Is the insured not fully protected by the right to recover the penalty, at the expiration of such sixty days, if the failure or delay of the insurers has not been in good faith?  True it is that the mere failure of the insurers to pay, for the sixty days referred to, would not of itself, as suggested supra, conclusively fix the penalty, because there might be circumstances which would show that the delay or failure or refusal to pay was not in bad faith, even though the insurer should ultimately be cast in the suit; but certainly the burden would be on the insurer to make this appear.

It is insisted that the insurance companies in the case before us refused to pay before the obligation to pay matured, and that such refusal was a waiver of the right to have a formal demand made upon them as a preliminary to a claim for the penalty.  The facts elready stated sufficiently show that this contention is not well based.  There was a fire.  The companies did not deny liability.  There was no controversy except as to the amount of the loss.  The insurers and the complainant endeavored to ascertain the amount by inspection and by inventories.  They could not agree.  Arbitration was then demanded and agreed to.  An award was filed.  Complainant demanded payment of

the award.   The companies answered by a bill to set aside the award because not in compliance with the arbitration agreement between the parties, and succeeded in obtaining that relief, and complainant acquiesced in this.   In the meantime complainant filed a cross-bill to recover on the award, and, in the alternative, on the policies.   She failed on the first and succeeded in the second; but no formal demand was ever made for the payment of the policies, irrespective of the award, prior to the filing of the cross-bill.   If it was the contention of complainant that the companies were liable irrespective of the arbitration proceedings, formal demand on that basis should have been made before action brought and the pleadings framed accordingly.

Petition overruled.