Harowitz v. Fire Ins. Co.

Harowitz *v.* Concordia Fire Ins. Co. *

(*Jackson.*   April Term, 1914.)

1. **INSURANCE.  Adjustment of loss.  Appraisal.**

An insurer was not entitled to demand an appraisement, to deter-
mine the loss under a policy providing for such an appraisement
in case of disagreement, where it made no objections to the
proofs of loss submitted, or any effort to agree on the amount
thereof, but its whole attitude was a denial of all liability.
(*Post, pp.* 693-699.)

Case cited and distinguished:   Hickerson & Co. v. Insurance Co.,
96 Tenn., 198.

2. **INSURANCE.  Adjustment of Loss.  Appraisal.**

While provisions in an insurance policy for an appraisement are
valid, and may be made a condition precedent to bringing suit,
they cannot oust the courts of their jurisdiction as to the
insured's legal liability; and where an insurer's attitude was a
denial of all liability, the court's jurisdiction was not ousted
by a demand for an appraisal.   (*Post, pp.* 699, 701.)

Case cited and distinguished:   Hickerson & Co. v. Insurance Co.,
96 Tenn., 198.

3. **INSURANCE.  Adjustment of Loss.  Appraisal.**

An insurer's demand for an appraisement of the loss was a con-
cession of its liability for some amount.   (*Post, pp.* 701-703.)

Case cited and distinguished:   Hickerson & Co. v. Insurance Co.,
96 Tenn., 198.

Cases cited and approved:   Grand Rapids Fire Ins. Co. v. Finn,
50 L. R. A., 555; Grady v. Home Fire & Marine Ins. Co., 4 L.
R. A., 291; Graham v. German American Ins. Co., 15 L. R. A.,
1060.

*The question of arbitration as condition precedent to action on in-
surance policy is treated in a note in 15 L. R. A. (N. S.), 1055.

4. INSURANCE.    Actions on Policies.    Penalties.

Under Acts 1901, ch. 141, authorizing the court in its discretion to impose a penalty upon an insurer, if its refusal to pay a loss was not in good faith, the chancellor was within his judicial discretion in refusing to assess the penalty, where the evidence disclosed that the fireman and others discovered gasoline or coal oil on the goods, justifying a suspicion that the fire was of dishonest origin, though that defense was not made. (*Post*, *pp*. 703, 704.)

Acts cited and construed:    Acts 1901, ch. 141.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County. —Hon. F. H. Heiskell, Chancellor.

J. H. Malone and H. H. Litty, for plaintiff.

R. Lee Bartels, for defendant.

Mr. Justice Buchanan delivered the opinion of the Court.

The bill prayed for a decree for the full amount of an insurance policy covering the stock of goods in a tailor shop, also for interest and the statutory penalty of twenty-five per cent. of the face of the policy. The decree granted was for the full amount of the policy, $2,000, and interest, $155. Recovery of the penalty was denied. Both parties appealed, and each have assigned errors here.

The company's complaint is that a decree for any amount was erroneous, while Harowitz insists that, in addition to the other amounts, he was also entitled to recover the penalty. The answer of the company admitted issuance of the policy and that a fire had occurred in the shop of assured, but denied total loss of the value of the goods. It admitted that the company had received proofs of loss, and made no complaint of informality or insufficiency of the same, but averred that the damage consisted solely of water damage to the woolens and other materials. It then set up what we take to be the real defense relied on, to wit, that the insurer had demanded an appraisal of the goods, and that by reason of default of assured no appraisal had occurred, and that, under the terms of the contract of insurance and facts of the case subsequent to the fire, appraisal of the goods and determination thereby of the sound value and loss was in law a condition precedent to the right of assured to recover upon the contract. The answer denied liability for the penalty, and averred that conditions existed on the premises of the assured after the fire such as justified the conviction that the fire was of incendiary origin; but the answer did not charge the fire to have been set by assured, or to have been caused by his negligence or procurement. In conclusion, the answer states:

"And now, having fully answered, it prays to be dismissed, with costs."

The policy contains a clause as follows:

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity, unless commenced within twelve months next after the fire."

The fire occurred August 1, 1912. It is manifest that if the defense made by the answer should be successful, and this suit should be dismissed, and a new suit be instituted, the beginning of the new suit would be more than twelve months next after the fire, as the date of the fire was August 1, 1912; and therefore it is clear that the defense made by the answer amounts in substance to a denial of all liability by the company. In fact, the averment in the answer that the damage to the goods consisted solely of water damage to the woolens and other materials amounts in substance to a denial of all liability under the policy, since under its terms the company was only liable for loss and damage caused by fire.

It has been held by this court that:

"Upon the happening of a fire loss, the insured is required to give notice and furnish a detailed statement of his loss. When this is received by the company, it is incumbent on the company to examine the same, and, if not agreed to, specific obections must be pointed out by the company, and an honest effort must then be made to adjust the differences. A mere genneral objection to the proofs, without pointing out in detail the items excepted to, will not be sufficient; but the objection must be so specific, with detail of items, as to enable the assured to see upon what points dif-

ferences exist, and a counter statement, if necessary, should be furnished, showing the contention of the companies in such way that the difference, if practicable, may be adjusted and settled. If this should fail after an honest effort is made, an appraisal may be demanded by either party, and only in such event." *Hickerson & Co.* v. *Insurance Companies,* 96 Tenn., 198 33 S. W. 1042, 32 L. R. A. 172.

The conduct of the company in the present case does not measure up to the standard laid down for it in the quotation last above set out. What was done on each side in respect of the demand for an appraisal which was made is to be gathered from the testimony of two witnesses, one of whom testified on behalf of the insured, and one of whom testified on behalf of the insurer. The witness who testified on this subject for the insured was Mr. H. H. Litty, attorney for the insured. It appears from his evidence that he was employed by the insured about September 1, 1912, to act for assured in the adjustment of this loss, and that he immediately called upon the local agent for the insurer, and was by that agent referred to Mr. Hart, adjuster for the insurance company. Litty called on Hart, and was advised by the latter to make proof of loss and send it to the company. This Litty did, and mailed the proofs of loss to the home office of the company by registered letter on September 7, 1912. No reply was made by the company to Litty acknowledging receipt of the proofs of loss, but in due season Litty received through the post office the registry, return receipt, showing

delivery of the proofs of loss to the company on September 9, 1912. Some time afterward Litty and Hart met on the street, and the latter requested Litty to call at his (Hart's) office. This Litty did, whereupon Hart demanded having an agreement entered into submitting the matter to appraisers, to which Litty says he agreed. Whereupon he says Hart named as an appraiser for the company Mose Plough; and Litty named Ed. Rapp. Hart immediately objected to Rapp on the ground that Rapp was biased, basing such claim upon the fact that Rapp had examined all of the goods damaged by fire, and had made this examination at the request of Litty, and had also made an estimate for Litty of the damage caused by fire to some of the goods. Litty says that he selected Rapp, because Rapp was regarded as an expert. He further says that he had called on Rapp and had submitted to him a copy of the oath required of appraisers, and that Rapp was willing to take the oath, and that in view of these matters he refused to withdraw the name of Rapp, and thereupon he stated that Hart refused to enter into an appraisement with Rapp acting for Harowitz. Litty complains that the conduct of Hart was overbearing, dictatorial, and insulting to such an extent that Litty was led to believe that Hart's demand for an appraisement was not in good faith. Litty furthermore says that, when Hart named Mose Plough as one of the appraisers, he (Litty) did not object, although he had always understood that Plough had some interest in

the insurance company's affairs, and frequently acted for them as an auctioneer in selling salvage.

Mr. Hart, the witness for the insurer, in his evidence admits that he objected to Rapp as an appraiser for Harowitz, and gives as his reason that Rapp had been working with Harowitz, and had made an estimate *ex parte* as to what he (Rapp) considered the damage to the goods was by fire, and that he (Hart) considered Rapp was incompetent to act as an appraiser under the oath demanded. Hart further testifies that after the first interview between himself and Litty, where the difference between them developed as to the competency of Rapp as an appraiser, he had another interview with Litty, in which he suggested that Litty select some other man, but that Litty never agreed to suggest any person other than Rapp. Hart denies in his evidence the statement of Litty in respect of his (Hart's) overbearing, dictatorial, and insulting conduct, and states in substance that he was not only willing, but anxious to have the matter submitted to appraisement, and that he so advised Mr. Litty, and requested Litty to get some one else to act in place of Rapp.

It was further held in *Hickerson & Co.* v. *Insurance Companies,* supra:

"That in the selection of appraisers it is not contemplated that either party shall select a person with a view to sustain his own views or further his own interest, but the appraisers are to act in a *quasi* judicial capacity, and as a court selected by the parties, free

from all partiality and bias in favor of either party, and so as to do equal justice between them. This tribunal, selected to act instead of a court and in place of a court, must be like a court, impartial and not partisan; and if these provisions are not carried out in this spirit, and for this purpose, neither party is precluded from going into the courts to reach his just deserts, notwithstanding the provisions.''

The word ''provisions'' in the quotation last above refers to provisions for appraisement in policies of insurance. The provisions for appraisement in the policy in the present suit are substantially the same as were those quoted in the opinion in *Hickerson & Co.* v. *Insurance Companies,* 96 Tenn., 195, 196, 33 S. W. 1041, 32 L. R. A. 172. The provisions for appraisement in the present case contained in the policy in suit are as follows:

''. . . . The loss or damage shall be ascertained, . . . and said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided.''

''The amount of loss or damage having been thus determined, the sum for which this company is liable shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy.''

''In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained

by two competent and disinterested appraisers, the assured and this company each selecting one, and the two so chosen shall select an umpire. . . . The award in writing of any two shall determine the amount of the loss.''

''And the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers, when appraisal has been required.''

''No suit or action on this policy shall be sustainable for the recovery of any claim in any court of law or equity, until after full compliance by the assured with all of the foregoing requirements.''

There appears in the transcript on behalf of the assured the deposition of Ed. Rapp, who was suggested by Mr. Litty as one of the appraisers on behalf of the assured. His evidence is intelligent, and he is seemingly a fair and unbiased witness. It may be that he was unduly biased in favor of the insured; but, if so, the fact certainly does not appear upon an examination of his evidence.

Upon the facts, it is clear that the conduct of the insurer, from the time of the happening of the fire down to and including the recitals in its answer filed in this cause, amounts practically to a denial of all liability under the policy.

The fire occurred on August 1, 1912. A month from that date elapsed before the insured employed Mr. Litty to represent him in the adjustment of the loss.

During that month it is clear that the goods were at all times open to the inspection of the insurer, and it had full opportunity to ascertain the extent of the loss and damage. It is in evidence that on the day after the fire representatives of the insured were in the business house where the fire occurred, making a full examination of the stock of goods and of the premises in which the fire occurred, and of the origin of the fire. It is clear from the evidence that the insurance company suspected the origin of the fire to have been incendiary, and we have no doubt from this evidence that it suspected the fire to have been a dishonest one in its origin, so far as the insured and his son were concerned.

This view of the matter is borne out by the fact that although the insurer, through its adjuster, Hart, demanded an appraisement of the goods, it made no specific objections to the proofs of loss, and pointed out no detail or item wherein the same was incorrect, and furnished to the insured no counter statement of the proofs of loss, showing the contention of the insurer in respect of any infirmity in the proofs of loss, or any overestimate thereby of the sound value and damage to the goods. Without doing this, we are of the. opinion that, under *Hickerson & Co.* v. *Insurance Companies,* supra, the insured was entirely beyond its rights when it demanded an appraisement under the terms of this policy. Provisions for appraisement in a policy of insurance providing a speedy and reasonable method of estimating and ascertaining the sound value and damage are valid, and such provisions may be made a

condition precedent to the beginning of a suit on a policy; but such provisions are never permitted to oust the courts of their jurisdiction as to the legal liability of the insurer.    When the insurer denies liability *in toto* upon the policy, it is a question for the courts.    The conduct of the insurer in the present case does not disclose any point of difference between himself and the insured in respect of sound value and damage to the goods.    Its attitude, on the contrary, is one disputing any liability whatsoever.    We have seen how it treated the proofs of loss when they were submitted to it by the insured, we have seen how these proofs of loss were treated in the answer, and now, when we come to examine the proof taken by it, we find the testimony of the five witnesses which it introduced devoted wholly to matters tending to exculpate it from all liability uner the policy; no one of the five witnesses testifying to any fact materially contradicting the evidence on behalf of the insured as to the amount of the sound value and loss by the insured as the result of the fire.

In *Hickerson & Co.* v. *Insurance Companies,* supra it is said that the insurer cannot demand an appraisal and arbitration of the amount of the loss, while at the same time it denies all liability under its policy, and a demand for appraisal by the insurer is a waiver of other defenses going to the question of liability.    The evidence for the insured shows loss resulting from fire in this case to have been a considerable amount more than the face of the policy, and the evidence on its behalf in the above respect is practically undisputed by

any evidence introduced on behalf of the insurer. The attitude of the insurer was inconsistent. Its demand for arbitration was a concession of its liability for some amount (*Hickerson & Co.* v. *Insurance Companies,* supra, and *Insurance Co.* v. *Morton, Scott, Robertson Co.,* 108 Tenn., 390, 67 S. W. 816) ; And the next step in order was for the insured and the insurer under the first clause of the quotation from the policy, supra, to ascertain and agree upon the loss or damage. The insurer evidently made no effort to ascertain and agree upon the loss or damage. It makes no contest of the amount thereof by its proof. It was in no attitude to demand an appraisal until it had made an effort to agree on the sound value and damage. If it had, prior to its demand for an appraisal, made an effort to comply on its part with the first clause copied from the policy supra, and then found itself unable to agree with the insured on the loss and damage, it would have been in position to call on the assured to comply with the other requirements quoted supra from the policy.

From what has been said, it is apparent that the question of who was in fault in respect of the failure of the parties to agree on the appraiser proposed by the insured is not reached. They did not agree, and this suit resulted, and we hold that the defense interposed is not good (1) on the ground that the insurer never entitled itself to demand an appraisal by making an effort to agree with insured on the sound value of and damage to the goods; and (2) on the ground that the attitude of the insurer throughout its defense to this

suit has been that of denying all liability, thus raising an issue of which no contract between the parties could oust the courts of jurisdiction.

Each of these grounds are announced in *Hickerson & Co.* v. *Insuarnce Companies,* supra. That case has been extensively cited and approved by courts of last resort in other states, as will appear by examination of Volume, 4, Extra Annotations, L. R. A. 820. This case is cited also in the footnotes to *Grand Rapids Fire Ins. Co.* v. *Finn,* 50 L. R. A. 555; *Grady* v. *Home Fire & Marine Ins. Co.,* 4 L. R. A. (N. S.) 291; *Graham* v. *German American Ins. Co.,* 15 L. R. A. (N. S.) 1056. Examination of the cases cited will show that the grounds on which we place our decisions are well sustained by authority.

We think there is no merit in any assignment of error made by the insurer in this case. Nor do we think there is any merit in the assignment of error made by the insured. The statute invoked by him is chapter 141 of the Acts of 1901. It authorizes the penalty referred to, provided that it shall be made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and provided further that the imposition of the liability shall be within the discretion of the court or jury trying the case, and be measured by the additional expense, loss, and injury thus entailed.

We think the chancellor was well within his judicial discretion in refusing a decree for the penalty in this cause upon the ground that the evidence on behalf of

the insured clearly discloses that when the firemen entered the building after the discovery of the fire, and extinguished the fire, they and other persons who visited the building later discovered evidence that, in some way not explained on the record, bolts of goods in the tailor shop, inclosed in glass cases, were dampened and smelled strongly of gasoline or coal oil, clearly justifying a suspicion that the fire was of dishonest origin. While this is true, the evidence would not sustain a defense based on that ground, and no such defense was made, yet we think there was sufficient ground for the denial of the penalty.

It results from the above views that the decree of the chancellor is affirmed, with costs.