INS.   CO.   *v.*   MORTON-SCOTT-ROBERTSON   CO.

(*Nashville.*    March   8,   1902.)

1. INSURANCE, FIRE.   *Reaffirmance of doctrines enunciated in former case.*

The Court reaffirms the doctrines enunciated in the case of *Ins. Co.* v. *Morton-Scott-Robertson Co.*, reported in 106 Tenn., 558. (*Post, pp. 385, 386.*)

2. SAME.   *Joint demand for appraisal of loss.*

One of several insurers of the same property is responsible for a joint, and therefore insufficient, demand for appraisal of loss made by the other companies for the benefit of all, where its agent co-operates with the agents of the other companies, approving and accepting the benefit of what they did or had done.   (*Post, pp. 385–387.*)

3. SAME.   *Same.*

By demanding approval or estimate of loss an insurance company concedes its liability under its policy for some amount; and ascertainment of that amount is the only question that remains for determination.   (*Post, p. 390.*)

Case cited: Hickerson & Co. *v.* Ins. Co., 96 Tenn., 193.

4. SAME.   *Salvage claim.*

By its refusal to proceed with an appraisal of loss demanded by itself and acceded to by the insurer, an insurance company waives its right, reserved by its policy, to take the salvage; or its proportion of it, in case of concurrent insurance, at its appraised value; and the insured may, in such case, lawfully dispose of the salvage.   (*Post, pp. 388–390.*)

FROM DAVIDSON.

Appeal   in   error   from   the   Circuit   Court   of Davidson   County.   JOHN   W.   CHILDRESS,   J.

Insurance Co. *v.* Morton-Scott–Robertson Co.

VERTREES & VERTREES and THOS. J. TYNE for Ins. Co.

LELLYET & BARR and JNO. A. PITTS and SMITH for Morton-Scott-Robertson Co.

SNODGRASS, C. J. This is an action upon a fire insurance policy. It was tried in the Court below before a jury, and there was verdict and judgment for $2,264.00 and costs, and the insurance company has appealed and assigned errors. These assignments are twenty-three in number and quite elaborately made. They could not be disposed of *seriatim* in any reasonable time, and need not be so considered, in as much as there are only a few determinative features in the case.

The general facts of the case are set out in much detail in the case of the *Palatine Ins. Co.* v. *Morton-Scott-Robertson Co.,* reported in 22 Pickle, 558, and will not be here repeated.

The North German Ins. Co. had insurance on the same property involved in the Palatine case, and concurrent with that and other companies, and is sued for the same loss.

It is insisted that there are material differences in the present case from the Palatine case, and hence the decision in that case should not be held conclusive in this.

The first material difference claimed is that in the Palatine case there was a joint demand by the insuring companies, of which the Palatine was

24 P—25

one, for a joint appraisal, to which the North German was not a party, but that the latter company, through its adjuster, made a separate demand for appraisal.

We have examined the record carefully upon this feature of the case.

We find that the Palatine Company made a separate demand for appraisal, as well as the North German, and this fact was stated in the Palatine case and commented on. But the point now made is that the North German was not a party to the original joint demand made by the other companies, and, therefore, stands in an attitude different and independent from the companies that did enter into that joint demand.

It appears that some negotiations had been agreed upon between the assured and the adjusters of the other companies before the arrival of Mr. Bassett, the representative of the North German Company, and they had been virtually abandoned.

It clearly appears from the record that while Mr. Bassett had not yet arrived on the scene, and did not, until the 19th, take any part in the conferences, his company was notified of all that was done and was being done.

The fire occurred on Friday, December 9, 1898. On January 9, the company was notified that counsel had been employed, and that the Royal

had made settlement, by the terms of which the salvage was to go to the insured.

On the 16th a copy of the opinion of counsel was sent to Mr. Bassett, and he was kept informed as to all that was transpiring, and was evidently co-operating with the other companies, and taking advantage of everything done by them that could be of benefit to him. He was present on the 19th of December, and actively co-operated with the other adjusters from that time forward, though he claims that he represented his company alone. But this was the case with the other adjusters; each represented his own company, but they acted in concert and under an organization or agreement, express or tacit, for mutual protection and defense.

After the conferences in person ceased, it appears that Mr. Bassett was notified by letter of all that occurred, just as were the others. An examination of the record forces the conclusion that Mr. Bassett did act in conjunction with the other adjusters, and was fully informed of all that was done, and made no objection to any of it, but tacitly approved and sought the benefit of it.

But we think this question not determinative or material in the aspect in which this case is presented, since there was an individual or separate demand made by the plaintiff, as well as by other companies, and it was acceded to by the

assured and afterward declined by the company, because, in the meantime, the salvage had been disposed of, and possibly the plaintiff could not obtain his proportion to which he would have been entitled.

So that we may consider the matters as occurring previous to this demand as not controlling, and proceed to examine the case in the light of the separate and individual demand which was made. It is said that the insured put it out of its power to have an appraisal by selling and disposing of the salvage, and this would bar plaintiff's action.

This question was considered in the Palatine case, and it was decided adversely to the contention of plaintiff upon what the Court then thought was sound reason and good business principles.

It is now sought to have this holding of the Court reviewed. It is very earnestly insisted that the ruling is incorrect, and a very learned and ingenious argument is made in support of this contention. That the option to take the salvage is a valuable one is conceded, and the companies cannot be arbitrarily deprived of it, and it has been held that the unauthorized sale of the entire salvage, so as to destroy this option of the insured, would defeat the insured's right of action. *Hamilton* v. *Liverpool Co.,* 136 U. S., 242.

In the Palatine case it was held that when

there are several insurers, with the same form of policy, the right of each is to take only his *pro rata* of the appraised salvage, articles; that even if the insured sells a portion of the salvage, it is immaterial so long as enough remains unsold to enable the complaining company to exercise its option under the policy to take its *pro rata* of the salvage.

It would seem that this is a reasonable rule, and in cases of concurrent insurance, perhaps the only practicable one.

It is said the proper rule is that all the companies must act together, and as a unit take all the salvage and divide the same among themselves, and that the option should be exercised collectively or not at all. This certainly would be an easy rule, and one which would largely relieve the assured, but it depends for its execution upon the assent and agreement of all the companies. There was no disposition manifested or offer made by the plaintiff company to enter into such an agreement, but, on the contrary, the company appears to have fought shy of doing anything practical to adjust the matter, relying upon the strict construction of the terms of its policy. In the meantime the salvage had been left in the possession of the assured, and several of the companies had agreed to its sale. It was in a damaging condition, and the delay but added to the deterioration. The salvage was the prop-

erty of the insured, and for its reasonable value he must account, so that it would be unfair to require him to hold it in a deteriorating condition while the companies · delayed settlement, and thus gave opportunity for its further depreciation. In addition, if there was a joint right ·to the salvage, which must be exercised as a unit, then, as a result, there might be a joint right of appraisal, which was denied in the Palatine case.

We are also of opinion that when an insurance company demands an appraisal or estimate of loss, it must be held to have conceded its liability for some amount, and the only question that remains open is the amount of the loss. This is the last step to be taken in the adjustment of a loss, and not the first one, as is usually held by insurance companies. Unless it be in exceptional cases, there is no necessity for an appraisal as long as liability is denied, and when the appraisal is demanded, other questions, which go merely to the liability of the insurance company, must be treated as waived. 96 Tenn., 193.

We think there was no error in apportioning the expense of selling the salvage goods. This rule was laid down in the Palatine case, and is based upon the rule announced in the case of *German Bank* v. *Haller,* 103 Tenn., 84.

While many other questions are presented and dwelt on, we think they are all settled by the

Insurance Co. *v.* Morton-Scott–Robertson Co.

Palatine case, and that that case was properly decided, and the present case is not distinguishable from it on any determinative question. The judgment of the Court below is, therefore, affirmed with costs.