INDEPENDENT LIFE INS. CO. v. R. C. KNIGHT.

Western Section. January 15th, 1926.

No petition for Certiorari was filed.

1. **Evidence. Legal presumption that man is innocent of a crime exists in civil as well as criminal cases.**

The legal presumption that a man is not guilty of a crime exists no more when a man is on trial for a criminal offence than at any other time or on the trial of a civil case when an attempt is made to show that a person has committed a crime. It exists at all times and everywhere and is a presumption that the law ever makes.

2. **Evidence. Party alleging fraud in a civil case must produce stronger proof than would suffice to establish a mere debt or sale.**

In an action on an insurance policy where the defendant alleged that it's agent had illegally colluded with plaintiff to defeat the insurance company, held the burden was on the defendant to show it's agent guilty of the crime and must furnish sufficient proof to overcome the presumption of innocence and honesty.

3. **Appeal and error. Directed verdict held properly given.**

In an action to recover on an insurance policy where the defense was that the premium had not been paid and that defendant's agent had colluded

with plaintiff and claimed to receive the premium and not paid it over to the c.mpany, held the defendant failed to show a conspiracy and fraudulent scheme on the part of its agent and the agent having the right to collect the premium there was no question to submit to the jury.

4. **Appeal and error. Appellate court will not consider anything not in bill of exceptions.**

A bill of exceptions must within the statutory time be both authenticated and filed and the appellate court will not consider anything that is not shown to be a part of the record below.

5. **Words and phrases. "Not in good faith" defined.**

The expression "not in good faith" as used in the statute penalizing insurance companies for refusal to pay, held to imply lack of good faith or moral intent as the motive for the refusal to pay a loss.

6. **Insurance. Statutory penalty for refusal to pay loss held properly assessed.**

In an action to recover on an insurance policy where the defendant repeatedly stated through its general agent that the claim would be paid and a check was expected any day, but the claim was never paid and was contested when suit was filed, held statutory penalty properly assessed.

Appeal in Error from Circuit Court, Shelby County; Hon. H. W. Laughlin, Judge.

Affirmed.

A. G. Riley, of Memphis, for appellant.

Holmes & Canale, of Memphis, for appellee.

OWEN, J. R. C. Knight, the plaintiff below, recovered a judgment against the Insurance Company, the defendant below, for $1000, the face of the policy, together with $3.65 interest, and $250 penalty. The policy sued on was issued on the 14th of August, 1923, upon the life of Laura C. Knight, wife of the plaintiff below.

Mrs. Knight died November 23, 1924. Suit was instituted March 9, 1925. The defendant filed pleas making the following defenses:

"(1) The general issue.

"(2) That under Condition II of the policy, a grace of thirty (30) days was allowed for the payment of premiums; that the last premium was paid July, 1924, and that the premium due on August 14, 1924, was not paid and the policy was lapsed on September 13, 1924.

"(3) That under Conditions I and VIII of the policy, premiums are payable in exchange for an official receipt signed by the President and Secretary and countersigned by an agent; that plaintiff tendered and exhibited a receipt for $7.70 dated September 14, 1924, alleged to be payment of a quarterly premium which would have kept the policy in force until November 14, 1924; that no premium was in fact paid on September 14, 1924; that in any event no payment was made in exchange for an official receipt and the agent was not authorized to use any but an official receipt.

"(4) That on November 29, 1924, defendant received $7.70, purporting to be a quarterly premium for August, September, and October, 1924, but plaintiff did not request reinstatement of the policy nor produce evidence satisfactory to the defendant of the insurability of Laura M. Knight and did not pay overdue premium with six per cent interest; that on November 29, 1924, Laura M. Knight was dead. The premium was tendered back and paid into court.

"(5) That defense to the suit was in good faith."

A proper replication was had on these various pleas. The defendant at the conclusion of all the evidence made a motion for a directed verdict on the following grounds: (a) that the policy had lapsed when the alleged premium of September 14, 1924 was paid: (b) that the temporary receipt issued by the agent on Sunday, September 14, 1924, was not a valid and lawful payment of the premium.

This motion was overruled. The plaintiff likewise made a motion for a directed verdict in its favor. The court sustained this motion so far as the amount of the policy and insurance thereon was concerned. The court submitted to the jury the question as to whether or not the plaintiff was entitled to recover a penalty, and the jury did find in favor of the plaintiff as to penalty. Defendants seasonably filed motion for new trial, which was overruled, and it prayed and was granted an appeal to this court. It perfected the same, had signed and filed a bill of exceptions and has assigned five errors in this court, as follows:

"First: There is no evidence to sustain the verdict of the jury and the judgment entered thereon.

"Second: The court erred in overruling the motion of defendant for a directed verdict in its favor made at the close of all the proof produced by the plaintiff."

This assignment is overruled and disallowed because the defendant introduced proof after this motion was overruled; and this court and the Supreme Court have held that the defendant who desires to rely solely upon the weakness of the plaintiff's case should not, after overruling of his motion for a directed verdict, introduce testimony. If he submits evidence and then renews his motion, the court should consider the case as a whole, including the corroborating or aiding testimony, if any brought forward by the defendant. Coal & Iron Co. v. Bennett, 8 Higgins, page 210; Smith & Wife v. Gerber, 150 Tenn., page 555.

The third assignment of error is—"The court erred in overruling defendant's motion at the conclusion of all the proof."

"Fourth: The court erred in granting plaintiff's motion for a directed verdict as to the face of the policy.

"Fifth: That there is no evidence to sustain the verdict of the jury assessing the penalty."

As to whether or not the defendant is liable, hinges on the question of a receipt for a premium that is not disputed, which bears date of September 14, 1924, in the sum of $7.70. The premium on this insurance policy of $1,000 on the life of Mrs. Knight was paid monthly, the premium being due the 14th day of each month and was for $2.90 per month.

July 14th had been paid, and by the terms of the policy and by the statute of Tennessee, chapter 457, of the Acts of 1907, appearing in Shannon's Code at sections 3348-A8-2, the insured had one month of grace from the date the premium was due until the policy lapsed. The premiums to July 14th had been paid prior to September. Prior to the 14th of September the premium due August 14, 1924, had not been paid. This policy of insurance had been procured for the defendant by one of its agents, one C. E. Lock. On September 14, 1924, C. E. Lock testified, and so does the plaintiff that he called on plaintiff and advised him that it was the last day he had in which to pay the premium on his wife's insurance. The plaintiff, being an employee of the Illinois Central Railroad at its warehouse in Memphis, Tennessee, and that the agent Lock informed the plaintiff that if he would pay every three months, or quarterly, which the plaintiff had a right to do by the terms of the policy, he would save one dollar. In other words, three times $2.90 would be $8.70, but by paying three months in advance, or quarterly, the premium would be $7.70. It appears that Knight usually paid the premium after it was due. When the $7.70 was paid Lock gave what is called a temporary receipt of the Company. The usual receipt given for the payment of a premium was called the official receipt. If the premium was not paid when due, the official receipt would be returned to Nashville the chief office of the defendant.

Mr. Jaco, the defendant's manager of the Memphis office testified that some of the Knight premiums were paid after the due date, with the result that there would be a return remittance to the company on that particular receipt and the agent at that time collecting would be forced to give a temporary receipt, which was agreeable with the Company at that time, provided it was within the thirty days' grace.

The proof further shows that the agent of the defendant received fifty per cent of the premiums collected on the character of insurance that the defendant had written upon the life of Mrs. Knight. Until June, 1924, an agent would collect a premium and turn in fifty per cent to the Memphis office. The defendant had fourteen agents working in the Memphis territory. Until about June, 1924, Mr. Robinson was the general agent of the defendant at Memphis. Robin-

son was succeeded by Mr. Jaco. Mr. Jaco changed the rules and regulations in regard to collecting premiums and required each agent to turn in all of his collections and on Saturday there would be a settlement with the agent in regard to his commissions on collections. It appears that following this change of procedure Lock who had a certain territory (and Knight, the plaintiff belonged in Lock's territory) turned in all of the June payment on the Knight policy ($2.90). In July, 1924, Lock kept all of the Knight premium ($2.90) as his commission. There seems to have been some misunderstanding or slight confusion in regard to this but that was straightened out satisfactorily to all parties; that is, the Memphis office and the agent Lock. Lock testified that he received the $7.70 late in the afternoon of September 14th and intended to turn in the said amount on Monday, September 15th, but he was assigned to special work under a special agent, a Mr. Wright, and that he forgot to turn in Knight's premium until Thursday of the week following Sunday September 14th. Jaco and Miss Jones, the cashier, testified that Lock did not turn in the Knight Premium until November 24, 1924, and only paid $5.70 on that date, and on December 1, 1924, he paid $2 more.

The plaintiff's records were not introduced showing these entries, but we find from the record that C. E. Lock, the agent, had the right to make the collection from Knight; that he had been instructed to get the money and that he was acting within the scope of his employment when he received the money from Knight, and that he collected it before the policy had lapsed; that while he gave a temporary receipt on that date, this was usual, and not an unusual thing for the agent to do in regard to collecting from Knight and from other parties who were carrying insurance with the defendant; and while it is insisted Lock and Knight were good friends, and that Lock's not paying the $5.70 until the day after Mrs. Knight died that this is a circumstance of fraud and collusion, yet we find no proof of fraud, and if Lock failed to pay the $7.70 after he had collected and after he had given a binding receipt upon the Company, that would not cause the policy to lapse or be forfeited. Both Knight and Lock testified that the payment was made on September 14th and the proof further shows that the defendant collected many premiums on Sunday; that it wrote insurance among laboring people and salaried people who drew their pay on Saturday nights or twice a month, and the agents had a follow-up system of looking after their patrons and collecting premiums on Sunday.

It further appears that Mr. Frank Glankler, one of plaintiff's attorneys, made inquiry of Mr. Jaco shortly before this suit was brought as to when plaintiff could get his money and Mr. Glankler was assured that everything was all right, that the check would

be forthcoming within a few days. Mr. Jaco admits having a conversation with Mr. Glankler, but testified he did not remember the substance of it.

The Act of 1907, chapter 457, allowing one month's grace on payment of insurance policies in Tennessee, is as follows:

"Provisions and conditions required in policies. No policy of life insurance shall be issued in this State, or be issued by a life insurance company organized under the laws of this State, unless the same shall contain the following provisions:

"2. Grace for payment of premiums; interest; deduction for death.—A provision for a grace of one month for the payment of every premium after the first year, which may be subject to an interest charge, during which month the insurance shall continue in force, which provision may contain a stipulation that if the insured shall die during the month of grace, the overdue premium shall be deducted in any settlement under the policy."

The agent Lock continued in the employ of the defendant until January, 1925, when he became an agent of the Cotton States Life Insurance under one Mr. Roberson, who was formerly the general agent of the defendant, and who was the agent of the defendant when Lock became an agent of the defendant.

"The legal presumption is that men are not guilty of fraud and dishonesty, and more strongly, that they do not commit criminal offense. This presumption exists no more, when a man is on trial for a criminal offense, than at any other time, or on the trial of a civil case, when an attempt is made to show that a person has committed a crime. It exists at all times, and everywhere, and is a presumption the law ever makes. Hence every man, however charged with dishonesty or fraud, or a criminal act, is always entitled to have this presumption of the law weighed in his favor, and whoever asserts the contrary, must always encounter it, and be required to overcome it by evidence. In the ordinary transactions of life, fairness and honesty are presumed and conveyance sales and contracts generally are presumed to have been made in good faith until the contrary appears. But from this it is not to be understood that fraud cannot be inferred from circumstantial evidence, as it is by evidence of this character that the charge must often, and, indeed, generally is, established. The party alleging fraud, deceit, or fraudulent representations must produce stronger proof than would suffice to establish a mere debt or sale; it is incumbent on him to furnish sufficient proof to overcome the presumption of innocence and honesty. In actions involving fraud, as in other cases where the facts present a double aspect, one consistent with fair dealing and the other involving dishonesty of purpose, the court, unless the scale decidedly prepon-

derates for the latter, will strike the balance in favor of honesty and innocence.'' Jones on Evidence, Vol. 1, page 98.

We are of opinion that the defendant failed to introduce any facts or circumstances that would show a conspiracy or fraudulent scheme on the part of its agent Lock and the plaintiff and the defendant's agent Lock having the right to collect the premium, and the right to give a receipt, there was no issue to submit to the jury whereby the defendant was relieved from liability on this policy of insurance. The defendant was not entitled to a motion for a directed verdict. There is material evidence to sustain the verdict of the jury in behalf of the plaintiff and under the undisputed facts, and taking them in the most favorable light in behalf of the defendant, plaintiff was entitled to a directed verdict in his behalf as to the face of the policy.

Assignments one, three and four are overruled and disallowed.

Under the rule announced in the case of Insurance Co. v. Anderson, 130 Tenn., page 489, we are of the opinion that the plaintiff in error in the instant case is really not in a position to make the points it has urged in this court in reference to the assignments disposed of. Practically all of its defenses are based on provisions of the policy, and, the receipt called a temporary receipt. None of these instruments are copied in the bill of exceptions. The bill of exceptions directs that these papers, and others, referring to them as exhibits Nos. 1, 2, 3, 4, etc. be set up. None of these papers appear to have been filed in the court below. Some of them have the signature of the trial judge, but the receipt complained of is in nowise identified. So, if they could otherwise be treated as a part of the bill of exceptions, with such doubtful identification by the trial judge, still never having been filed in the court below they cannot be looked to here. A bill of exceptions must, within the statutory time, be both authenticated and filed, and we cannot consider anything in this court that is not shown to have been a part of the record below. Dunn v. State, 127 Tenn., 267; Insurance Co. v. Anderson, 130 Tenn., 489.

This brings us to the last assignment of error and it is earnestly insisted that there is no evidence to sustain the verdict of the jury awarding the statutory penalty in the case. The words ''not in good faith'' imply lack of good faith or moral intent as the motive for the refusal to pay a loss. They described the state of mind which underlie the act of refusal to pay. It is the existence of this state of mind as the cause of the act and the resulting damage to the victim of the act which the statute penalizes, just as our laws intended to punish and suppress crime look not to the act which damages society and perhaps destroys its victim, but to the intent or motive which caused the act and the resulting public and private damage. It was not the purpose or intent of the legislature creating the act allowing penalty that refusal to pay a demand, made by a policyholder after

occurrence of a loss and within sixty days after making the demand should, at all events, without more, confer upon the policyholder a right to the penalty. The right to recover the penalty is not an absolute one, it is conditional. Thompson v. Insurance Co., 116 Tenn., 557; Sullivan v. Life Insurance Co., 135 Tenn., 646; Harowitz v. Fire Insurance Co., 129 Tenn., 691.

The theory of the plaintiff in contending for the penalty and the theory of the defendant in denying that it was liable for the penalty were submitted to the jury under a proper charge of the court. The defendant relied upon the fact that the policy had lapsed. Under its own proof it accepted the payment which had been given to its agent on the 14th day of September, 1924. This acceptance was had according to defendant's contention November 24, 1924, and forwarded to the general office at Nashville, Tennessee; and while the defendant insisted through its plea that there was fraud between its agent C. E. Lock and the plaintiff, yet the defendant permitted this agent to continue in defendant's employ after learning of the alleged bad faith and misconduct on the part of the agent. The defendant repeatedly stated through its general agent at Memphis, Tennessee, that the claim would be paid and a check was expected any day. The plaintiff awaited for this promised check that never came, and plaintiff's counsel was never told that the defendant would deny liability. The plaintiff was forced to employ counsel and bring suit and the purpose of the statute is to protect the policyholder and permit him without expense to collect one hundred cents on the dollar of the insurance company's obligation when the premium has been paid, in consideration of which premium the insurance company promises to pay a stipulated amount upon the death of the insured. Courts are slow to penalize any institution, and especially if a defense is made, the bona fides of which cannot be challenged, but we are of opinion that there is evidence to sustain the jury's finding that the defendant is liable for this penalty, and it results that the last assignment of error is overruled.

There is no error in the judgment of the lower court. All assignments of error are overruled and disallowed. The plaintiff will recover of the defendant and its surety on appeal bond the amount of the judgment rendered in the lower court, together with interest thereon from the date of its rendition, and all the costs of the cause, including costs of appeal, for which execution will issue.

Heiskell and Senter, JJ., concur.