# ANSLEY v. TRAVELERS INS. CO.—173 S. W. (2d) 702.*

Western Section. March 9, 1940.

Petition for Certiorari denied by Supreme Court, June 29, 1940.

---

*This opinion should have appeared in Volume 26 but was inadvertently omitted.

Earl King and H. W. Laughlin, Jr., both of Memphis, for plaintiff in error.

Emmett W. Braden, of Memphis, for defendant in error.

ANDERSON, J. This action was based on the double indemnity provision of three life insurance policies, liability accruing by reason of other provisions having been settled. The pertinent language of each limited the coverage to death resulting "from bodily injuries effected directly and independently of all other causes through external, violent and accidental means within ninety days from the date of the accident which shall have caused such injuries and of which, except in the case of drowning or internal injuries revealed by an autopsy, there is a visible contusion or wound on the exterior of the body . . . "

A former trial resulted in a verdict and judgment for the plaintiff which, upon appeal, we reversed, remanding the case for a new trial on the ground that while under the undisputed evidence the death of the insured resulted from a bodily injury effected by accidental means, it was not shown that the fatal injury was evidenced by a visible contusion or wound on the exterior of the body.

Travelers Insurance Co. v. Ansley, 22 Tenn. App. 456, 124 S. W. (2d) 37.

Upon the second trial, which is under review, the sole issue was with respect to the existence of such evidence on the exterior of the body. At the conclusion of the plaintiff's proof the trial judge held that, in the light of our opinion upon the former appeal, there was no such evidence, and accordingly directed a verdict for the defendant. The plaintiff brought the case here by appeal in error.

There is no dispute in the evidence, and the sole question presented is whether; when it is viewed in the light most favorable to the plaintiff, it can be reasonably said that within the meaning of the language as used by the parties in making the contract, there was a "wound or contusion" on the exterior of the insured's body, evidencing the fatal injury.

The pertinent facts now before us are somewhat different from those presented on the former appeal.

The medical testimony was to the effect that insured died from "chloral bromide poisoning" resulting from the cumulative effect of a medicine known as "hypnotic compound," which he took for a nervous condition resulting from the drinking of intoxicants. The doctor who arrived upon the scene shortly before the death testified that he found the insured in a condition of shock, "and he had a pallor and a thready pulse"; that he called an ambulance and rushed him right over to St. Joseph's (hospital); that upon his arrival he was given adrenalin, artificial respiration and oxygen; and that "he died right on the table." This evidently occurred a few moments after insured reached the hospital.

The plaintiff, who is the insured's widow, testified that after taking the medicine he entered the bedroom and

"fell face downward in his bed"; that "he said he felt like he had broken his leg"; and his face was "very pale, and his head was drawn back and his mouth wide open and his lips were swollen"; that his eyes were "glassy, sunk back in his head."

The driver of the ambulance in which he was carried from his home to the hospital, in response to the question, "Did you see any abrasion or contusion on him at all", testified that "on one of his legs, I believe it was on the left leg, a little scraped place or a little scratched place; none other than that except his lips were mighty blue". He further testified as follows:

"Q. What about his face, the color of his face? A. I guess you would call it—it was blue all over. His lips were dark, real dark blue, or purplish. I don't know how to explain it, I have seen so many in that—just like that, you see, where the condition is very bad. It showed bad circulation."

This was all of the material evidence on the determinative issues.

In support of her position, the plaintiff, as she did upon the former appeal, refers us to several cases from other jurisdictions dealing with policies of accident insurance containing provisions requiring in substance that the fatal injury be evidenced by a visible "sign or mark" on the exterior of the body and again urges upon us that there is no distinction between a policy provision of this kind and one making liability dependent on the injury being evidenced by a visible "contusion or wound" on the exterior of the body.

■ We concede again, as we did before, that there are cases which apparently hold more or less in accordance with the plaintiff's contention. These we considered

before and have done so again. With due deference to the opposite view we are unable to adopt it and give to the language of the clause here in question a meaning as broad as that insisted upon by the plaintiff. Our reasons appear in the opinion rendered on the former appeal.

The commonly understood meaning of the noun, "wound", as given in Webster's New International Dictionary, Second Edition, is "An injury to the body of a person or animal, esp. one caused by violence by which the continuity, as skin, mucous membrane or conjunctiva is broken."

The same authority defines the verb, "contuse", as follows: "Formerly, to beat or pound together; now, to bruise; to injure or disorganize a part of without breaking the skin." The noun, "contusion", is defined as, "A bruise; an injury attended with more or less disorganization of the subcutaneous tissue and effusion of blood beneath the skin but without breaking the skin."

Our former conclusion upon this phase of the case was based in large part upon the logic of the opinions of the Federal Courts in the case of Paist v. Aetna Ins. Co., 3 Cir., 60 F. (2d) 476. The policy involved in that case had a provision similar to that under consideration. The insured's death was caused by sunstroke and the evidence relied upon to meet the policy requirement was to the effect that the insured's face was flushed and sunburned. As to the contention that this condition was a "contusion or wound", the District Judge, in his opinion, said: "It might be just possible to bring it under the definition of wound given by the Century Dictionary as the meaning of the word in medical jurisprudence and cited by the plaintiff, but in insurance policies courts have again and again refused to adopt technical definitions and have

adhered to the ordinary and popular meanings of words used. There is no reason why this rule should not work both ways. Certainly, in ordinary parlance 'contusion' is almost exactly synonymous with 'bruise,' and to say that a flushed countenance is a wound would go beyond the limit of allowable interpretation.'' 54 F. 2d 393, 395.

In the same connection, upon appeal the Circuit Court of Appeals for the Third Circuit, said [160 F. (2d) 477]: ''We are here dealing with a written contract in which the parties agreed that the accident against which the insured was indemnified was one 'evidenced by a visible contusion or wound on the exterior of the body.' These words, 'contusion,' 'wound,' 'visible on the exterior of the body,' are of well-known commonly understood meaning. 'Contusion,' which has as its Latin origin, 'con' and 'tundere,' to strike, means a bruise or wound caused by a blow, but where, as here, no physical blow is struck, where there is no bruising, where the skin is not blow-bruised or blow-broken, certainly, in common speech and common understanding, the death of the plaintiff's husband from sunstroke cannot be said to be 'evidenced by visible contusion or wound on the exterior of the body.' ''

After full consideration, we thought the foregoing to be the sounder view with respect to the construction to be given the policy provision under consideration, and adopted it instead of that apparently entertained by other courts in the cases relied upon by the plaintiff.

It seemed to us then, and seems to us now, that the latter adopted the technical definitions of the words, ''wound or contusion'', whereas we think there is nothing in the policies before us that would justify this course.

As we pointed out in the former opinion, it is the settled rule of construction in this state that unless it is

obvious that words of a contract are intended to be used in their technical connotations they will be given the meaning that common speech imports. Pacific Mutual Life Ins. Co. v. Hobbs, 168 Tenn. 690, 80 S. W. (2d) 662; Conley v. Pacific M. L. Ins. Co., 8 Tenn. App. 405; Aschenbrenner v. United States Fidelity, etc., Co., 292 U. S. 80, 54 S. Ct. 590, 78 L. Ed. 1137.

■ The plaintiff again invokes the familiar rule that, where the terms of a policy of insurance are of doubtful meaning, the construction most favorable to the insured will be adopted. When the case was here before, while recognizing the general principle, we undertook to demonstrate the fallacy of the contention that it finds application in this case.

■ In addition to the authorities cited in the former opinion, the decision of the Appellate Division of the Supreme Court of New York, in the case of Dupee v. Ins. Co., 253 App. Div. 278, 2 N. Y. S. (2d) 62, 64, is in point and the reasoning instructive. The policy provision there under consideration was identical with that in this case. The insured died of sunstroke. The evidence relied upon as showing that there was a visible contusion or wound on the exterior of the body was to the effect that the insured's face and head were very red, redder than usual, and his face was somewhat swollen. A physician, testifying as an expert, gave the opinion that sunburn was considered a first degree burn and stated that a first degree burn is medically considered a wound.

After setting out this testimony, the Court said: "There does not appear to be in any jurisdiction a decision which holds that the effects of sunstroke constitute proof of 'a visible contusion or wound on the exterior of the body.' On the medical testimony in this

action it could be found that doctors would consider sunburn a 'wound,' but the courts have stated repeatedly that the language in insurance policies is not to be construed like words of art, but is to be given such meaning as the average policyholder, as well as the insurer, would attach to it. Paist v. Aetna Life Ins. Co., 3 Cir., 60 F. (2d) 476, 477; Johnson v. Travelers' Insurance Co., 269 N. Y. 401, 407, 408, 199 N. E. 637; Abrams v. Great American Ins. Co., New York, 269 N. Y. 90, 92, 199 N. E. 15.''

■ After reviewing the Paist case, supra, and another, the Court continued: ''The most reasonable and unstrained construction of the policy in suit, therefore, would seem to be that it does not contemplate that a very red face and head, with the face somewhat swollen, is evidence of a visible contusion or wound on the exterior of the body. I think this conclusion must be accepted, notwithstanding that the courts are disposed to construe policies of insurance liberally and most favorably to beneficiaries, and that there are decisions that have permitted recoveries in cases where no mark visible to the eye was left on the body. These cases, however, do not involve sunstroke, nor was there a specification in the contracts that there be 'a visible contusion or wound on the exterior of the body'; and the nature and extent of the holdings have been explained in Rosenthal v. American Bonding Co., 207 N. Y. 162, 100 N. E. 716, 46 L. R. A. (N. S.), 561.''

This decision was affirmed on appeal by the Court of Appeals. 278 N. Y. 659, 16 N. E. (2d) 391.

■ ■ Reverting to the facts of the case at bar, apart from the scratch on the insured's leg, the condition relied upon as constituting a wound or contusion was that just prior to his death the insured's face was pale and his

lips were somewhat swollen and blue. We do not think either condition was within the common, ordinary meaning of the words, "wound or contusion." A pale face and swollen, blue lips might be regarded as indicating, and as a sign of, an internal disorder or even an injury, but we cannot conclude that either is of itself a wound or contusion within the ordinary meaning of those words, especially in the absence of any expert evidence on the point. Incidentally, the record before us furnishes very good proof that this is true, so far as laymen are concerned. For instance, the plaintiff was asked by her counsel if she saw "any wound or cuts or contusions on him anywhere", and she replied, "No." Another lay witness, Mr. Tapp, who also undertook to testify as to the conditions on the exterior of the body, was asked, "Did you see any contusion or wound on him anywhere?", to which he responded, "No, sir." It is fair to assume from their testimony and station in life that these witnesses were in fact above the average in intelligence, and that they understood the ordinary meaning of the words, "wound and contusion". It is perfectly clear that it never occurred to either that the conditions relied upon as meeting the policy requirement were within the ordinary meaning of these words, or either of them. Their conclusion is of course not binding on us. We refer to it only as indicating the understanding of the ordinary layman with respect to the meaning of the words. In this connection it is worth noting that the plaintiff did not ask the attending physician, whom she introduced, whether there was a wound or contusion on the exterior of the body.

The basis of our decision on this phase of the case is that there is no justification for giving to the words in

question their technical meaning and, hence, their ordinary meaning must be ascribed to them.

 There is, however, another reason why the plaintiff cannot prevail. The burden was on her to show a causal connection between the conditions relied on as constituting a wound or contusion and the fatal injury. See Fidelity Mutual Ins. Co. v. Powell, 4 Cir., 74 F. (2d) 525; United States Mutual Acc. Ass'n v. Barry, 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60.

 In this respect she failed altogether. This is true not only with respect to the scratched place on the insured's leg, but also with respect to the condition of his face and lips. As to the former it is not contended that it had any connection with the injury that resulted in the insured's death. With respect to the blueness of the lips, the ambulance driver, who did not qualify as an expert and who was the only witness who undertook to testify about the matter, said that the condition was due to poor circulation. Apart from his testimony, if it can be regarded as having any probative value, a question not necessary to decide, the cause of the condition relied upon by plaintiff as meeting the policy requirement was left to speculation.

The result is that the judgment is affirmed at the cost of the appellant.

Ketchum, J., and Lloyd S. Adams, Special Judge, concur.