Lloyd LOWE, Appellee,

v.

**PREFERRED TRUCK LEASING, INC.,
and Leasway Preferred Trucking,
Inc., Appellants.**

Woodrow F. BRANK, Appellee,

v.

**PREFERRED TRUCK LEASING, INC.,
and Leasway Preferred Trucking,
Inc., Appellants.**

Court of Appeals of Tennessee,
Eastern Section.

April 25, 1975.

Certiorari Denied by Supreme Court
Sept. 2, 1975.

Petition to Rehear Denied by Supreme
Court Oct. 14, 1975.

Jay B. Stringer, Chattanooga, for appellants.

Denny E. Mobbs and Charles M. Corn, Cleveland, for Lowe.

Conrad Finnell, Cleveland, for Brank.

## OPINION

GODDARD, Judge.

Defendants Preferred Truck Leasing, Inc. and Leasway Preferred Trucking, Inc. (considered at trial and for purposes of this appeal as one defendant) have appealed from a jury verdict in favor of Plaintiff Lloyd Lowe in the amount of $90,000 and in favor of Plaintiff Woodrow F. Brank in the amount of $1200. Defendant claims that there was no credible evidence introduced at the trial to support the jury verdict that found its negligence to be the proximate cause of a vehicular accident occurring on October 3, 1968, near Bedford, Virginia, which occasioned the Plaintiffs' injuries.

We summarize the material evidence from the five volumes of trial testimony.

Defendant leased over-the-road tractors to Collins Manufacturing Company, a chair manufacturer in Cleveland, Tennessee. Collins owned their own trailers, but Preferred maintained both the tractors and the trailers. Plaintiffs Brank and Lowe were employed as truck drivers by Collins, which is not a party to this suit. Lowe was a more experienced driver but both had considerable experience handling tractor-trailer units.

A few days before this incident, Brank and Lowe had taken a 1966 White 7400 tractor and a double tandem trailer to Lansing, Michigan. Lowe drove this tractor regularly but Brank had not driven it before this trip. Upon their return to Cleveland around 1:00 p. m., October 2, 1968, they left the tractor at the Collins lot and went to their homes. After being called and informed that they were needed for a trip to Alta Vista, Virginia, they picked up the same tractor (with a different trailer attached) at Preferred's lot around 8:00 p. m. the same evening.

They drove to Loudon, Tennessee, where they stopped for food. There is conflict as to who drove to Loudon and who drove as they left Loudon, but by the time they had gotten to Lenoir City, the testimony is that Brank was driving and Lowe was asleep in the sleeper section of the cab. In Loudon, Lowe bled the brakes to remove condensation from the air lines, a normal maintenance procedure.

The trip was basically uneventful until they reached the vicinity of Roanoke, Virginia. Brank had never driven this route before this trip and asked directions at a service station outside of Roanoke. He decided to go over Peaks of Otter mountain to Alta Vista because this seemed the most direct route. He drove for a time on the Blue Ridge Parkway, from which trucks are prohibited, and turned off onto Highway 43. Highway 43 traverses Peaks of Otter which is some 4,000 feet high.

Lowe had informed Brank of the route he considered the best to follow through the mountains when they had stopped at Loudon. Apparently, Brank forgot the directions or decided not to follow them. Lowe's route would have avoided Peaks of Otter entirely.

The tractor was equipped with a ten-speed transmission. The lower five gears are known as "the low side," and the higher five as "the high side." Changing the transmission from the high side to the low side is accomplished by pushing a button on the side of the gear shift lever.

Brank testified that he went up the mountain in second-low gear and crested it at about 10 miles per hour. He did not see any "No Trucks" signs at the top of the hill. He started down the mountain in the same

gear in which he went up—second on the low side—and applied the brakes, never shifting out of second gear. When he applied the brakes he heard a "psss" noise and "didn't have nothing." The truck did not slow down, but continued to gain speed until it reached between 50 and 80 miles per hour. Brank could not control the truck at that speed down the curving incline. He yelled for Lowe, who awoke and started to crawl out of the sleeper. One of them pulled the emergency brake button but it failed to respond. Finally, Brank "ditched" the truck, turning it over in order to stop it, and the tractor and trailer traveled some distance down the side of the mountain. The accident resulted in injuries to both Plaintiffs, the severity of which are not contested on this appeal.

Grouped in related sections, the remainder of the testimony pertinent to the decision of the case follows:

## PRIOR BRAKE TROUBLE

Lowe testified that he had had trouble with the brakes on this tractor many times. The brakes worked badly on the Lansing trip. When they returned from Lansing, he reported, as he had on many prior occasions, that the brakes were not functioning properly. At Loudon he bled water from the brake lines because the brakes were not working well. Either the brakes worked "no better" or "fine" after he bled them— he testified both ways.

Brank testified that the brakes were not working properly on the Lansing trip. (Alternatively, he testified that the brakes worked "fine" on the Lansing trip.) He further testified that Lowe bled the brakes at Loudon and the brakes worked either "fair" or "good" on the trip to Virginia.

He did not use the brakes at all from Loudon until he started down Peaks of Otter.[1]

## PHYSICAL FACTS

The top speed of the tractor in the various gears is approximately: first gear—7.5 mph; second gear—9.5 mph; third gear—12 mph; fourth gear—15.5 mph; fifth gear—19 mph; sixth gear—24 mph; seventh gear—30 mph; eighth gear—38 mph; ninth gear—48 mph; and tenth gear—60 mph.

Traveling 50 to 80 miles per hour, with the transmission in second gear (also called second on the low side in the testimony), the engine would be destroyed by centrifugal force.

The engine and drive train were not damaged in the accident.

The tractor brakes were relined 4000–5000 miles after the accident.

On April 16, 1970, the same tractor (with new brakes and a similarly loaded trailer) was driven down Peaks of Otter mountain in first gear at five to six miles per hour without the brakes ever being used.[2]

On October 4, 1968, a Ford cab-over tractor similar to the White cab-over involved in the accident was driven down the mountain (with an empty trailer to the wreck site and half full from there to the bottom of the mountain) at 18–19 mph in second gear.

When the trailer was pulled to Cleveland the day after the wreck, its brakes operated properly.

A buzzer on the air brake system sounds when the air pressure in the system drops below a certain level. This buzzer never sounded during the descent from the top of the mountain.

---

1. Assumption of risk and contributory negligence were defenses raised in this suit and have been summarily briefed on appeal. However, the determination of this suit makes it unnecessary to decide these questions and they are, therefore, pretermitted.

2. This was an experiment conducted by the defense. The truck was driven in first gear instead of second (the gear Brank testified he was in at the time of the accident) apparently because of a misunderstanding of Brank's testimony in his discovery deposition. The driver during the experiment testified that the truck would have traveled three to four miles per hour faster in second gear.

## CONDITION OF THE BRAKES AFTER THE WRECK

The trailer brakes, according to a defense witness who inspected them, could be operated about 100,000–125,000 miles. The tractor brakes were "about half wore out" and would be usable another 75,000–100,000 miles. The trailer was not used any more because of the extensive damage to it. The tractor brakes were relined some 4000–5000 miles after the accident, purportedly because they were "glazed" (a condition caused by overheating the brake linings) and not because they were worn out.

## BRAKE MAINTENANCE

There was credible evidence from which the jury could determine that the tractor was new in 1966; that on September 19, 1968 it had been operated 172,392 miles; that it still had the original brake linings; that the brake linings had last been adjusted at 135,187 miles on May 17, 1968; and that the brakes should have been adjusted at least every 10,000 miles.

■ Defendant in seeking reversal of the jury's verdict, which has been approved by the Trial Judge as the 13th juror, has assigned 19 errors. Assignments numbered one, four, five, six, seven, eight, and 10 through 18 are unsupported by authority in violation of Rule 13 of this Court and are accordingly overruled. *Jackson v. Jackson*, 25 Tenn.App. 198, 154 S.W.2d 797 (1939). The remaining assignments—numbered two, three and 19—raise one issue and will be considered together. By these assignments Defendant contends that there was no credible evidence adduced to support the verdict of the jury.

■ This Court does not sit as a jury of three to reweigh the evidence in jury cases. Once a jury, who has the opportunity of seeing and hearing the witnesses themselves, has determined the factual issues involved in a law suit and that determination has been approved by the Trial Judge, we may only review the evidence to ascertain if there is any credible evidence upon which that determination may be predicated. If there is, then even if we believe that the trier of fact has reached an erroneous decision, we must accept it. As is well known to all who practice before the appellate courts of this state, the burden of showing that there was no credible evidence to support a jury verdict is a massively heavy one to bear.

■ However, this does not mean that we must passively sit by and allow patently impossible, incoherent, or perjured testimony to support a jury verdict. The rule is that there must be some credible evidence—not merely some evidence—to support a jury verdict. That is, there must be some evidence which is capable of being believed by reasonable men, although we may not choose to believe it ourselves.

A corollary of this standard has come to be known as the "physical evidence" rule. In *Oliver v. Union Transfer Co.*, 17 Tenn. App. 694, 698, 71 S.W.2d 478, 480 (1934), the Middle Section of this Court quoted with approval from a Kentucky case which described this rule:

> A statement of alleged facts inherently impossible and absolutely at variance with well-established and universally recognized physical laws will not supply the required scintilla of evidence, a theory inherently impossible based upon a statement of alleged facts certainly cannot supply it. *Louisville Water Co. v. Lally*, 168 Ky. 348, 182 S.W. 186, 187, L.R.A. 1916D, 300.

See also: *Jenkins v. Associated Transport, Inc.*, 330 F.2d 706 (6th Cir. 1964); *Gordon's Transports v. Bailey*, 41 Tenn.App. 365, 294 S.W.2d 313 (1956); *Harris v. Miller*, 24 Tenn.App. 332, 144 S.W.2d 7 (1940).

This Court stated as far back as 1914:

> It seems to be now firmly established that appellate courts may disregard impossible or *palpably* improbable testimony and treat it as no evidence: *Quotaing [Quock Ting] v. U. S.*, 140 U.S., 417 [11

S.Ct., 733], 35 L.Ed., 501. Tested by this rule, plaintiff's explanation of the seeping of the fluid from the outside must be discredited. This was and is demonstrably impossible, and no Court could proceed to judgment satisfactorily under the circumstances.

It seems to us that another rule is or should be operative: Positive testimony should be weighed in connection with its circumstances and with the situation to which it has reference; and if these circumstances demonstrate absolute untruthfulness of the testimony, then the statement of fact, however positively made, should be disregarded: *Atlantic Works v. Brady*, 107 U.S., 192 [2 S.Ct. 225], 27 L.Ed. 438.

*Nashville C. & St. L. R.R. v. Justice*, 5 Tenn.Civ.App. 69, 71 (1914).

■ The instant case is one where this rule is operative. Plaintiff Brank testified positively that the truck was in second gear and raced out of control, reaching speeds of 50 to 80 miles an hour. But all other proof showed that this was a physical impossibility; that the truck could not reach such speeds in second gear even with full power applied and that the attempt to reach such speeds in second gear would destroy the engine beyond repair. Also, the uncontradicted evidence is that the truck could have been driven (and similar trucks were driven) down this mountain in any of several low gears without the brakes ever being applied. Similarly, the testimony strongly indicates that, in any gear on the high side, the brakes were not designed to stop the truck on inclines such as this.

We have viewed the brake shoes taken from the trailer and while, of course, we cannot say whether they were properly adjusted, we believe we may confidently say that they were not in need of relining. Therefore, failure to reline the brakes could not be considered negligence on the part of Defendant.

■ The record does support a finding by the jury that Defendant was negligent in failing to adjust the brakes of the tractor. Defendant denies this allegation and offered proof to the contrary but Plaintiffs' proof on this aspect of the case is credible and so we are bound by it. However, proving that Defendant was negligent in this regard is not in itself sufficient to support the verdict. It must also be proven that this negligence was the proximate cause of the injuries suffered by Plaintiffs.

■ As we have said, the physical evidence reveals that the truck could have negotiated the mountain without any brakes at all if driven in the proper gear. Yet beyond that, we find it palpably improbable that all of the brake shoes on the truck, even if maladjusted, would wear down both simultaneously and instantaneously causing the truck to run out of control as it is claimed that it did.

Admittedly, the truck did reach uncontrollably high speeds and did wreck. Yet, this result in itself cannot supply the reason for the wreck nor the person responsible for this tragic occurrence. This Court is certainly not accusing Plaintiff Brank of conscious or unconscious falsehood, but we simply do not find that his explanation of the way the accident occurred is physically possible. Therefore, unless the evidence provides another credible explanation which would tie the negligence of Defendant to the accident the action must fail. We have searched the record and can find none.

Therefore, since the only negligence competently proven against Defendant could not reasonably be taken as the cause of the accident, we must sustain the assignments of error questioning the evidence, reverse the judgment of the Trial Court and dismiss the action with the costs taxed against the Appellees.

PARROTT and SANDERS, JJ., concur.