* Petition for certiorari not sought. Published with the approval of the Presiding Judges of the three Sections.

Ronald G. **WALKER**, Plaintiff-Appellee,

v.

**TENNESSEE FARMERS MUTUAL INSURANCE COMPANY,** Defendant-Appellant.

Court of Appeals of Tennessee, Eastern Section.

July 19, 1977.

Rehearing Denied Aug. 12, 1977.*

Paul Campbell, Jr., Chattanooga, for defendant-appellant.

Jack R. Brown, Chattanooga, for plaintiff-appellee.

## OPINION

GODDARD, Judge.

Tennessee Farmers, Defendant-Appellant, appeals a judgment rendered by the Circuit Court for Hamilton County, upon a jury verdict, making award for both breach of Defendant's insurance contract in connection with the theft of a truck owned by Ronald G. Walker, Plaintiff-Appellee, and a bad faith penalty because of Defendant's refusal to pay.

There are 12 separate assignments of error; however, they fall into three categories: (1) failure of the Court to direct a verdict in favor of the Defendant, (2) failure of the Court to direct a verdict as to the bad faith penalty, and (3) errors in the Court's charge to the jury.

There is little conflicting evidence regarding the material facts. The Plaintiff obtained a standard liability insurance policy from the Defendant covering a 1972 Chevrolet truck. The policy also included coverage for loss by theft. According to Plaintiff's testimony his vehicle was stolen from the Northgate Shopping Center on August 11, 1975, (the correct date is August 20, as shown by the police report) about 7:30 p. m. while he had been shopping. He reported the theft to the police department of the City of Chattanooga, and on the next day his wife also reported it to the insurance carrier's local agent. A few days later he gave a signed written report relative to the incident, as well as a taped statement. Although he complied with all the requests and completed all the papers initially required by the company, no payment was forthcoming. About five weeks after the theft one of the Defendant's adjustors called him and requested that he take a polygraph test relative to the loss of the

vehicle. This request was made notwithstanding the fact that the Defendant had no information at that time which would indicate that the Plaintiff was in any way involved in the loss of the vehicle, although it was later learned by discovery depositions taken some two weeks prior to trial that he had submitted to two separate charges of receiving stolen property. The first an automobile, and the second a boat and trailer. At first the Plaintiff agreed to take the test but later recanted. The Defendant again requested in a formal letter to Plaintiff in care of his attorney that the examination be taken and contended in the letter that his failure to submit to the examination was a violation of the policy and a condition precedent to recovery. Subsequent to the theft and prior to suit being filed, there were a number of contacts, generally initiated by the Plaintiff, between him and the Company. These conversations consisted only of inquiries relative to the whereabouts of the truck.

The policy, in pertinent part, provides: Named Insured's Duties When Loss Occurs—Coverages D, E, G, H, and P. When loss occurs, the named insured also shall:

.      .      .      .      .

(b) upon the company's request, exhibit the damaged property to the company and submit to examinations under oath by anyone designated by the company, subscribe the same, procure and produce for the company's examination all pertinent records, receipts and invoices, or certified copies, if originals be lost, permitting copies thereof to be made, all at such reasonable times and places as the company shall designate.

■ As to the first category of assignments of error, we cannot agree with Defendant's counsel that the language of the policy is sufficiently broad to require the policy holder to submit to a polygraph examination. As has often been said, the cardinal rule in construing contracts is to determine the intent of the parties. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578 (Tenn.1975);

*Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355 (1955); *Trailmobile, Inc. v. Chazen*, 51 Tenn.App. 576, 370 S.W.2d 840 (1963), and words expressing such intent are to be given their usual, natural, ordinary meaning. *Seeley v. Pilot Fire & Casualty Co.*, 222 Tenn. 33, 432 S.W.2d 58 (1968); *Moore v. Life & Casualty Co.*, 162 Tenn. 682, 40 S.W.2d 403 (1931); *Ansley v. Travelers Ins. Co.*, 27 Tenn.App. 720, 173 S.W.2d 702 (1940). In our view, upon applying the foregoing rules, the words "submit to examinations under oath by anyone designated by the company, subscribe the same," cannot admit of the construction insisted upon by Defendant.

■ Additionally, we note, as shown by the cases annotated in 23 A.L.R.2d at 1306, that under the general rule, polygraph examinations, because of their unreliability, may not be used in evidence. Our Supreme Court has specifically so held in criminal cases. *Grant v. State*, 213 Tenn. 440, 374 S.W.2d 391 (1964); *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451 (1958).

The second category directs itself to the awarding of a bad faith penalty.

As pertinent here, T.C.A. 56–1105 provides:

The insurance companies of this state, and foreign insurance companies and other persons doing an insurance business in this state, in all cases when a loss occurs and they refuse to pay the same within sixty (60) days after a demand shall have been made by the holder of the policy on which said loss occurred, shall be liable to pay the holder of said policy, in addition to the loss and interest thereon, a sum not exceeding twenty-five per cent (25%) on the liability for said loss; provided, that it shall be made to appear to the court or jury trying the case that the refusal to pay said loss was not in good faith, and that such failure to pay inflicted additional expense, loss or injury upon the holder of said policy; and, provided, further, that such additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the

case, be measured by the additional expense, loss, and injury thus entailed.

█ Under the holdings of our courts, before there can be a recovery of penalty under T.C.A. 56–1105, (1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must wait 60 days after making his demand before filing suit unless there is a refusal to pay prior to the expiration of the 60 days, (4) the refusal to pay must not have been in good faith. *De Rossett Hat Co. v. London Lancashire Fire Ins. Co.*, 134 Tenn. 199, 183 S.W. 720 (1915); *St. Paul Fire & Marine Ins. Co. v. Kirkpatrick*, 129 Tenn. 55, 164 S.W. 1186 (1913); *Third Nat. Co. v. Thompson*, 28 Tenn.App. 436, 191 S.W.2d 190 (1945).

█ Applying the above to the facts of the present case, we are constrained to the view that no formal demand was ever made. It is true that the Plaintiff initially completed all of the forms required by the Defendant and cooperated fully in answering questions regarding the theft. This, however, does not meet the requirements of the statute, which is penal in nature and must be strictly construed. *St. Paul Fire & Marine Ins. Co. v. Kirkpatrick*, supra. Thus, it is incumbent upon the Plaintiff to show compliance therewith. We also concede that had a formal demand been made in all likelihood the Defendant, relying upon its insistence relative to the polygraph test, would not have paid the claim, but we are of the opinion the Defendant was entitled to notice of the claim for bad faith and a period in which to reflect upon the consequences of its failure to pay. In addressing a similar problem our Supreme Court, in *St. Paul Fire & Marine Ins. Co. v. Kirkpatrick*, supra, 129 Tenn. at 72; 164 S.W. at 1190, employed this rationale:

> The demand provided for in the statute is intended to operate as a fair warning to the insurer that the penalty will be claimed, on failure to pay within 60 days. It is not improper or unjust that such warning should be required. This requirement does not have any bearing upon the right of the insured to enforce the contract itself. Immediately upon the maturing of the policy under its terms, the arising of the duty to pay, the insured may bring suit to enforce the contract. The penalty statute gives an additional right. Its purpose was to supersede the necessity of suit, or, in case suit should finally have to be brought as a result of the delinquency of the insurer, then to indemnify the insured against delay interposed and defense made in bad faith; the underlying thought being that the insurers on formal demand so made would, noting the warning, thereby be induced to pay the loss without suit, in the absence of some real and bona fide defense. Is it not better that the insured should in this simple manner hasten the payment of the loss within two months than that suit should be brought immediately on the maturity of the policy, and then that the insured should be compelled by the necessary delays of litigation to wait many months, or a year, or longer?

█ The last category of assignments of error relates to the charge of the jury, the Defendant first insisting that it was error to leave to the jury's determination whether the terms of the contract contemplated a polygraph examination. Assuming *arguendo* this to be true, and because the language of the policy is unambiguous we are inclined to agree with counsel that it was a matter for the Court, this Court has reviewed the contract and, as above noted, reached the same conclusions as did the jury. Accordingly, the error, if any, is harmless as contemplated by T.C.A. 27–117.

█ The second facet of this category attacks the charge of the Court in limiting the scope of proof relative to Plaintiff's conviction as reflecting only upon his credibility, insisting that the proof was sufficient to permit the jury to consider his criminal record in deciding "whether or not the vehicle in question had ever been stolen or whether or not it was just another arrangement of this plaintiff." The authorities cited by the Defendant are not supportive of its position, but rather, because they

hold if a witness is found to have sworn falsely in one matter the jury may disregard his testimony on other matters, supports the charge given by the Trial Court.

For all of the foregoing reasons the assignments of error directed to the bad faith penalty are sustained, and all others overruled. The judgment of the Court is modified to eliminate the bad faith penalty and, as modified, affirmed. The costs are adjudged against the Defendant and its sureties.

OPINION ON PETITION TO REHEAR

■ Tennessee Farmers Mutual Insurance Company, Defendant-Appellant, files a petition to rehear asserting a ground that counsel believed "inadvertently escaped the attention of the Court: THAT BEING THERE IS NO EVIDENCE TO SUPPORT THE VERDICT OF THE JURY AS TO THE AMOUNT OF THE AWARD FOR THE TRUCK OF TWENTY–TWO HUNDRED ($2200) DOLLARS."

Counsel is correct that this point escaped our attention. We suspect it was occasioned in part because the point was not specifically assigned as error, nor addressed in the Appellant's original brief.

Nevertheless, we have considered the question, and in view of the Plaintiff's testimony that his vehicle was worth between $2500 and $2700, and our belief that the physical evidence rule enunciated in *Lowe v. Preferred Truck Leasing, Inc.*, Tenn. App., 528 S.W.2d 38 (1975), is inapplicable to the facts of this case, overrule the petition.