292

OVERTON SQUARE, INC., Appellant,

v.

The HOME INSURANCE COMPANY,
Appellee.

Supreme Court of Tennessee.

Feb. 18, 1980.

Rehearing Denied April 28, 1980.

Ernest G. Kelly, Jr., Cobb, Edwards, Nichol, Woodall & Kelly, Memphis, for appellant.

Douglas A. McTyier, Wilson, McRae, Ivy, Sevier, McTyier & Strain, Memphis, for appellee.

## OPINION

FONES, Justice.

The question presented is whether plaintiff's proof made out a *prima facie* case of coverage under the safe-burglary endorsement in the policy issued to it by defendant. The trial court directed a verdict in favor of defendant at the close of plaintiff's proof and the Court of Appeals affirmed. We reverse.

Unknown burglars entered plaintiff's premises by knocking a hole through a masonry wall and absconded with the contents of a floor safe, $17,152.21, and the removable "door" that housed the combination locking mechanism.

Plaintiff's vault or safe was described by its vice-president as follows:

"The safe, when the foundation to the building was poured, the safe which is a metal wall vault of approximately eighteen inches deep in a twelve-inch square is set into concrete. There is a metal ring around the top of the box that this lid or locking mechanism will set into, and with the proper combination, I think you can notice on the top that rods come out and catch the bottom lip of the metal ring that's in the floor."

The "door" was not hinged to the "vault" portion of the safe that was imbedded in the floor, and had to be removed in its entirety to gain entrance to the safe.

The insuring clause of the safe-burglary endorsement reads as follows:

" 'Safe Burglary' means (1) the felonious abstraction of insured property from within a vault or safe, described in the Declarations and located within the premises by a person making felonious entry into such vault or such safe and any vault containing the safe, when all doors thereof are duly closed and locked by all combination locks thereon, provided such entry shall be made by actual force and violence, of which force and violence there are visible marks made by tools, explosives, electricity or chemicals upon the exterior of (a) all of said doors of such vault or such safe and any vault containing the safe, if entry is made through such doors, or (b) the top, bottom or walls of such vault or such safe and any vault containing the safe through which entry is made, if not made through such doors, or (2) the felonious abstraction of such safe from within the premises."

The lower courts held that plaintiff had not made out a case of coverage because it had not shown that entry had been made by actual force and violence, evidenced by visible marks appearing either on (a) the "doors" of the safe or (b) the portion of the safe that remained in the premises, imbedded in concrete. Coverage under clause (2), "the felonious abstraction of such safe from within the premises," was denied, as a matter of law, because the burglars took only the "door," leaving the portion imbedded in the concrete floor.

As we interpret the safe-burglary endorsement involved here, it provides coverage for the felonious abstraction of the contents of an insured vault or safe under three circumstances, to wit:

(1)(a)[1] Where visible marks of entry are left on the exterior of the door, if entry is made through the door, or

(1)(b) Where visible marks of entry are left on the top, bottom or walls of the safe or vault, if entry is not made through the door, or

(2) The felonious abstraction of such safe from within the premises.

We agree with the courts below that plaintiff has failed to bring itself within coverages (1)(a) or (1)(b). Plaintiff could not show visible marks upon the "door" of the vault or safe because the "door" housing the locking mechanism was "abstracted." Plaintiff had no coverage under (1)(b) requiring that visible marks be shown on the *top, bottom,* or *walls* of the vault or safe, if entry was not made through the *door.* Obviously, entry was made through the missing door, which was also the top of the plaintiff's vault or safe. The bottom and walls of plaintiff's vault or safe were imbedded in concrete and for all practical purposes, were impregnable, non-abstractable, and would never be subject to "visible marks" to gain entry thereto.

The foregoing analysis demonstrates that, given the type of vault or safe that defendant's policy purported to insure, it was impossible for plaintiff to establish coverage under (1)(a) or (1)(b) with the "door" to the safe or vault having been abstracted, as in this case.

Defendants admitted on interrogatories introduced at the trial and appearing in the bill of exceptions, that it had knowledge that one of the two safes it insured was set in concrete and that only the door containing the locking mechanism was removable.

Coverage (2) reads, "Safe Burglary means . . . (2) the felonious abstraction of such safe from within the premises." The purpose of coverage (2) must be construed to give the insured protection when "insured property" has been feloniously abstracted along with so much of the safe as prevents a showing of visible marks under either alternative of coverage (1).

We think it is significant that throughout coverage (1) the phrase "vault or safe" is used, but in coverage (2) only the word "safe" is used. The "depository" set in concrete falls comfortably within the dictionary definition of vault which is "a room

1. The three circumstance are numbered (1)(a), (1)(b), and (2) to correspond with the numbering in the policy endorsement.

or compartment, often built of steel, for the safekeeping of valuables." *American Heritage Dictionary of the English Language*, 1418 (1970). In my view the "depository" set in concrete is a vault, the entrance to which was guarded by the locking mechanism or door which in this instance constituted the "safe." In short, the policy recognizes that a "vault," by its very nature, is non-removable and that vaults are a depository for valuables, the entrance to which are guarded by some type of locking mechanism which is the "safe."

Historically, the courts have said that the "visible marks" requirement in this type policy has as its underlying purpose, the exclusion from coverage of "inside jobs." In *Gracey v. American Automobile Insurance Co.*, 188 Tenn. 230, 218 S.W.2d 735 (1949), this Court speculated that, in addition to inside jobs, the visible-marks requirement was designed to exclude coverage where the thief is an expert in solving the combination.

We are unwilling to construe the coverage provisions of a safe-burglary policy that says nothing about "inside" or "outside" jobs or expert lock pickers, against a speculative factual background that silently concludes the presence or absence of one of those factors.

Given the type of safe-vault combination insured in this case it is patently obvious that unless the abstraction of the removable locking mechanism would invoke coverage (2), the policy would provide no coverage whatever; that proof of visible marks would be foreclosed and the taking of all that could be "abstracted" would fall short of satisfying the company's interpretation of coverage (2). In our view such a construction of the policy leaves the insured in the position of paying a premium for nothing.

We hold that the conditions precedent to the application of coverage (2) were *prima facie* satisfied by plaintiff's proof and it was error to direct a verdict. We remand the case to the trial court for a new trial on that issue. Costs are adjudged against defendant, The Home Insurance Company.

BROCK, C. J., and HENRY, J., concur.

COOPER and HARBISON, JJ., dissent.

COOPER, Justice, dissenting.

I agree with the majority that the plaintiff failed to bring itself within coverage (1)(a) or (1)(b) of the safe-burglary endorsement. However, I am of the opinion, contrary to the majority, that the plaintiff failed to bring itself within coverage (2) of the safe endorsement policy and that the trial court and Court of Appeals acted properly in dismissing plaintiff's suit.

Coverage (2) says simply that "Safe Burglary means . . . (2) the felonious abstraction of such safe from within the premises." By construction, the majority adds to this simple language and holds that coverage (2) gives the insured protection when insured property has been feloniously abstracted "along with so much of the safe as prevents a showing of visible marks under either alternative of coverage (1)." The majority then reasons that the "locking mechanism" of a floor-safe, being the only part that could be removed from the insured's premises, is "the safe" within coverage (2). By this construction and reasoning, in my opinion, the majority of the court has written a new contract for the parties and then concluded that plaintiff's losses were covered under coverage (2) of the policy as written by the majority.

It is axiomatic that the language of an insurance policy, as any other contract, must be given its ordinary meaning and import. *See Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578 (Tenn.1975); *Walker v. Tennessee Farmers Mut. Ins. Co.*, 568 S.W.2d 103 (Tenn.App.1977). Further, the courts must take contracts as written and cannot add clauses not contemplated by the parties. *Holland v. Morrison*, 14 Tenn.App. 73 (Tenn.App.1931). With these basic rules in mind, I find that Black's Law Dictionary, 1501 (Rev. 4th ed. 1968), defines "safe" as "a metal receptacle for the preservation of valuables." I have found other definitions and each of them refers to some type con-

tainer in which valuables are to be placed. Nowhere, though the safe-endorsement coverage in the policy issued plaintiff is standard, have I found any indication that the word "safe" means the "locking mechanism" of a safe or vault—in this case a removable circular combination lock. That device is the mechanism by which the safe is opened; it is a part of the safe even though it is not hinged to the safe and may be removed from it.

In justification of the construction placed on clause (2), it is noted that the majority insists that;

> Given the type of safe-vault combination insured in this case it is patently obvious that unless the abstraction of the removable locking mechanism would invoke coverage (2), the policy would provide no coverage whatever; that proof of visible marks would be foreclosed and the taking of all that could be "abstracted" would fall short of satisfying the company's interpretation of coverage (2) . . . [And that] . . . such a construction of the policy leaves the insured in the position of paying a premium for nothing.

I cannot accept this premise. First, it is based on the assumption that in every case where entry is made into a floor safe, visible marks of entry will be absent. I find no basis in the record for this assertion. To the contrary, Jessie Wilson who is called upon to investigate numerous burglaries in his position as vice president of the American Claim Service, testified:

> [T]hat there were no shavings that would indicate any drilling or anything of that nature, no violence, nothing.

> So I don't see how they could have—whoever it was, could have opened the safe and not—without getting something in there [the bottom of the safe]

> And I am certain that they didn't hang around and clear it out and get out what was still down there.

> \* \* \* \* \* \*

> A. I feel certain that whoever did it knew the safe combination.

Second, in the instant case the safe endorsement covered two safes on the premises. One was a free-standing safe, subject to being removed totally from the premises. In my opinion this fact justified the inclusion of coverage (2) in the safe-burglary endorsement.

I would affirm the action of the lower courts in dismissing plaintiff's suit.

HARBISON, J., concurs in this opinion.

OPINION ON PETITION TO REHEAR

FONES, Justice.

The petition to rehear does not raise any questions not given full consideration in the original opinion and it is therefore denied.

All members of the Court adhere to their original views of this case.

BROCK, C. J., and COOPER, HENRY, and HARBISON, JJ., concur.